359 F.Supp.2d 545 (2005)
CITIFINANCIAL, INC. and American Health and Life Insurance Company Plaintiffs
v.
Annie NEWTON Defendant
No. CIV.A. 3:03-CV-1272B.
United States District Court, S.D. Mississippi, Jackson Division.
March 4, 2005.
*546 Richard C. Keller, Burr & Forman, LLP, Thomas Ernest Borton, IV, Burr & Forman, LLP, Birmingham, AL, for Citifinancial, Inc. as Iowa Corporation formerly known as Citifinancial of Mississippi, Inc. formerly known as Commercial Credit Corporation, American Health and Life Insurance Company, Plaintiffs.
Louis G. Baine, III, Page, Kruger & Holland, P.A., Brian Ashley Clark, Page, Kruger & Holland, P.A., Jackson, MS, for Annie Newton, Defendant.

OPINION AND ORDER
BARBOUR, District Judge.
Before the Court is Plaintiffs' Motion for Summary Judgment on their Complaint to compel to arbitration Defendant's claims against Plaintiffs. Having the considered the Motion, Response, Rebuttal, attachments to each and supporting and opposing authority, the Court finds that the Motion is well taken and should be granted.

I. Factual and Procedural History
The facts of this case are those of a typical consumer fraud action. On December 31, 2002, Defendant Annie Newton brought the underlying action in this case against CitiFinancial, Inc., American Health and Life Insurance Company and Mario Arellano in the Circuit Court of the First Judicial District of Hinds County, Mississippi, alleging that defendants improperly included insurance products as part of a loan transaction. Defendant filed this state court action along with co-plaintiffs Billy Harrison, Kim Harrison, and Bobby McLaurin.
On April 14, 2003, defendants removed the underlying state court suit to this Court. The case is currently pending before the undersigned, and is styled Harrison, et al. v. CitiFinancial Corp., et al., *547 Civil Action No. 3:03-CV-523BN ("Harrison").
On November 17, 2003, in the United States District Court for the Southern District of Mississippi, Plaintiffs in this action (defendants in the underlying state court suit) filed independent actions to compel arbitration against three of the four plaintiffs, Billy and Kim Harrison and Annie Newton, from the underlying state court action.[1] The petitions to compel to arbitration the subject claims were based upon arbitration clauses included in the loan documents that were signed by the state court plaintiffs. The complaint to compel to arbitration the claims of Billy and Kim Harrison was assigned to Judge Henry T. Wingate, in a case styled Citifinancial, Inc., et al. v. Harrison, Civil Action No.: 3:03-CV-1275WS. The complaint to compel to arbitration the claims of Defendant, Anne Newton, was assigned to the undersigned.
On March 23, 2004, in Harrison, all proceedings except discovery were stayed pending the resolution of Smallwood v. Illinois Central Railroad Co., 385 F.3d 568 (5th Cir.2004), by the United States Court of Appeals for the Fifth Circuit. An outstanding Motion to Remand is currently before the Court in Harrison. The Fifth Circuit decided Smallwood on September 10, 2004, and Judge Wingate, in an Order dated September 14, 2004, compelled Billy and Kim Harrison's claims to arbitration. That Order is currently on appeal before the Fifth Circuit, No. 04-60979.
The decision of Judge Wingate leaves Defendant Anne Newton as the sole remaining plaintiff in Harrison. Before addressing the outstanding Motion to Remand in Harrison, the Court first addresses Defendant Newton in this Motion for Summary Judgment on Plaintiffs' Complaint to compel arbitration, as this decision will render moot the Motion to Remand in Harrison.
The facts specific to this action are more fully developed below under applicable sections.

II. Legal Standard for Summary Judgment
Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir.1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir.1988).
The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue *548 of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S.Ct. 2548.
Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir.1962).

III. Analysis
Plaintiffs submitted the Petition for Order Compelling Arbitration ("Petition"), docket entry no. 1, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. Now before the Court is Plaintiffs' Motion for Summary Judgment on this Petition.
Generally a two-step inquiry applies to actions to compel.
The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. When deciding whether the parties agreed to arbitrate the dispute in question, `courts generally ... should apply ordinary state-law principles that govern the formation of contracts.' In applying state law, however, `due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.' The second step is to determine `whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'
Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir.1996)(internal citations omitted).
III.A. Whether the parties agreed to arbitrate the dispute in question
Plaintiffs raise a less common argument. Plaintiffs argue that before the Court decides whether the parties agreed to arbitrate the merits of Defendant's consumer fraud action, the Court must first decide whether the parties "agreed to arbitrate the issue of arbitrability itself or whether the parties intended for arbitrability to be decided by a court, as in a motion to compel arbitration." Id. at 258 n. 3(stating in full that "[i]n some cases, an additional, threshold inquiry will be whether the parties agreed to arbitrate the issue of arbitrability itself or whether the parties intended for arbitrability to be decided by a court, as in a motion to compel arbitration"). Therefore, the threshold issue in this case is whether the parties agreed to arbitrate issues related to jurisdiction before the arbitrator.
The Supreme Court of the United States spoke to this issue in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The Supreme Court stated:
*549 When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts....
This Court, however, has (as we just said) added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is `clea[r] and unmistakabl[e]' evidence that they did so. In this manner the law treats silence or ambiguity about the question `who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question `whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'  for in respect to this latter question the law reverses the presumption.
But, this difference in treatment is understandable. The latter question arises when the parties have a contract that provides for arbitration of some issues. In such circumstances, the parties likely gave at least some thought to the scope of arbitration. And, given the law's permissive policies in respect to arbitration, one can understand why the law would insist upon clarity before concluding that the parties did not want to arbitrate a related matter. On the other hand, the former question  the `who (primarily) should decide arbitrability' question  is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the `who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.
Id. at 944-945, 115 S.Ct. 1920(emphasis in original).
Plaintiffs argue that
[t]he Court's task is easy. It should merely compel arbitration and leave the question of arbitrability to the arbitrator because, under the clear and unmistakable terms of the American Arbitration Association (`AAA') Rules and the parties' Arbitration Provision, the arbitrator has the power to determine the `existence, scope or validity' of the arbitration agreements and it was the parties' intent that the arbitrator do so.
Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, p. 5, filed January 21, 2004.
The Arbitration Provision at issue provides that "any Claim ... shall be resolved by binding arbitration in accordance with... the Expedited procedures of the Commercial Arbitration Rules of the American Arbitration Association ... and ... this Provision." Id., attached as Exhibit "A," p. 2, to Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment(emphasis added). The Arbitration Provision then proceeds to list examples of claims that are subject to arbitration. The arbitration of the Arbitration Provision itself is not listed. Nevertheless, Plaintiffs argue that Defendant is responsible for recognizing that the clause directly above incorporates into the Arbitration Provision all rules of procedure that apply to the AAA, and which are found in an entirely *550 separate document. See Exhibit "B," attached to Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment. The incorporated rule which Plaintiffs argue mandates the arbitration of arbitrability is AAA Rule 7, entitled "Jurisdiction," provides: "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Id. at p. 10. Plaintiffs argue that because the Arbitration Provision incorporates all the rules of procedure of the AAA, and hence AAA Rule 7, the Arbitration Provision meets the bar of First Options and Webb by making it "clear and unmistakable" that the parties agreed to arbitrate questions of arbitrability. Plaintiffs bolster their argument with AAA Rule 1, which states:
The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] ... These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA.
Id. at p. 8.
In accordance with First Options and Webb, in order for the Arbitration Provision to require the arbitration of arbitrability, the agreement must meet the requirements of ordinary contract formation under Mississippi law, as well as the requirement that the agreement clearly and unmistakably requires the arbitration of this issue.
III.A.1. Whether the Agreement to Arbitrate Jurisdictional Matters Meets the Requirements of Mississippi Contract Law
Defendant does not dispute that she voluntarily signed the contract that contains the Arbitration Provision at issue. Rather, Defendant argues that the Arbitration Provision is unenforceable because her signature on the contract was obtained through fraud. Defendant claims that Plaintiffs committed a fraud because "[t]he actions of a still unknown employee of Citifinancial prevented Newton from knowingly and meaningfully being able to contract." Defendant's Response to Plaintiffs' Motion for Summary Judgment, p. 8, dated January 28, 2005. Defendant offers no insight or evidence into how an employee of Citifinancial prevented her from knowingly and meaningfully being able to contract, when at the same time she admits that she voluntarily signed the contract.
Under Mississippi law, it is well settled that a party to a contract is presumed to have knowledge of the contents of the contract that he or she signed. E.g., Russell v. Performance Toyota, Inc., 826 So.2d 719, 726 (Miss.2002). The presumption has considerable force, as "knowledge of the contents of a contract will be imputed to a contract party even though he did not read the contract before signing it." Brumfield v. Pioneer Credit Co., 291 F.Supp.2d 462, 469 (S.D.Miss.2003)(citing Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss.1987)). The argument Defendant advances has been explicitly rejected by sound precedent from the Supreme Court of Mississippi.
To permit a party when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts.
Busching v. Griffin, 542 So.2d 860, 865 (Miss.1989).
*551 Defendant voluntarily signed the contract, and the Arbitration Provision in the contract states that "any Claim ... shall be resolved by binding arbitration in accordance with... the Expedited procedures of the Commercial Arbitration Rules of the American Arbitration Association ... and ... this Provision." Id., attached as Exhibit "A," p. 2, to Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment(emphasis added). While the Rules of the AAA at issue were referenced and not recited, the Arbitration Provision plainly states that AAA Rules will govern disputes between the parties. Those rules provide that the arbitrator will decide questions of arbitrability. Defendant cannot sign a document that states that AAA procedures will govern disputes between the parties, and then claim she did not understand that AAA procedures will govern disputes between the parties.
III.A.2. Whether there is a "Clear and Unmistakable" Agreement to Arbitrate Jurisdictional Matters
First Options qualified its holding that state law will govern agreements to arbitrate arbitrability by holding that irrespective of how state law would resolve the issue, the agreement must still be "clear and unmistakable." The agreement must clearly and unmistakably reflect this intent because "... the law creates a presumption that the parties did not agree to submit any question as to the arbitrator's own power to that very same arbitrator." General Motors Corp. v. Pamela Equities Corp., 146 F.3d 242, 248 (5th Cir.1998).[2]
Although the United States Court of Appeals for the Fifth Circuit has not addressed the effect of a reference to AAA Rules contained in an arbitration clause, other circuit and district courts have. The Tenth Circuit, in P & P Indus., Inc. v. Sutter Corp., 179 F.3d 861, 867 (10th Cir.1999), said the following when holding that by merely agreeing to arbitrate before the AAA, the parties also impliedly agreed that AAA procedural rules would apply:
[The argument has been made], however, that the parties' arbitration clause, which mandates that any disputes shall be arbitrated `before the American Arbitration Association,' indicates an agreement that the parties be bound by the procedural rules of the AAA. We agree.
Courts interpreting similar contractual clauses, in which the parties agree to arbitrate before the AAA but do not specify which procedural rules are to apply to the arbitration, have held that `[s]ince the drafter of the arbitration provision contemplated arbitration by the AAA of all disputes arising out of the contract, the relevant commercial arbitration rules promulgated by the AAA were incorporated into the arbitration agreement.' Schulze and Burch Biscuit Co. v. Tree Top, Inc., 642 F.Supp. 1155, 1157 (N.D.Ill.1986), aff'd, 831 F.2d 709 (7th Cir.1987); see also Mulcahy v. Whitehill, 48 F.Supp. 917, 919 (D.Mass.1943) (stating that `the defendant's unqualified submission of disputes' to arbitration before the AAA `necessarily implied a submission to the Rules of Procedure of the [AAA]' and that `[i]t follows ... that the defendant, by consent, is bound ... by the [AAA's] Rules of Procedure'). Indeed, Rule 1 of the AAA, to which P & P did not object, states that `[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association.'
We find the logic of this Rule, and of the courts interpreting similar contractual *552 provisions, to be persuasive, especially in light of the liberal federal policy favoring binding arbitration. See McKee, 45 F.3d at 985. A party who consents by contract to arbitration before the AAA also consents to be bound by the procedural rules of the AAA, unless that party indicates otherwise in the contract.
Id. at 867(internal citations omitted & emphasis added).
This case is different than Sutter and the cases cited in Sutter because the parties here not only agreed to arbitrate before the AAA, but they also agreed to be bound by the procedural rules of the AAA. Those procedures explicitly state that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rules, Exhibit "B," p. 10, attached to Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment(emphasis added). Therefore, the Court finds that Defendant agreed to arbitrate questions of jurisdiction before the arbitrator.
In the alternative, the Court finds that Defendant's underlying consumer fraud claims are subject to arbitration. The Arbitration Provision covers all claims relating to any past, present, or future loan, the sale of any insurance product in connection with a loan, or any alleged wrongdoing in connection with those loans. See Exhibit "A," attached to Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment.
IT IS THEREFORE ORDERED that the Motion of Plaintiffs Citifinancial, Inc. and American Health and Life Insurance for Summary Judgment [5-1] is well taken and is hereby granted. Defendant is compelled to arbitrate the issue of arbitrability.
IT IS FURTHER ORDERED that a Final Judgment will be entered on this day administratively closing this matter.
NOTES
[1] Ultimately it was not necessary for Plaintiffs to file a complaint to compel arbitration against the fourth plaintiff, Bobby McLaurin. The March 23, 2004, Order of the Court which stayed proceedings due to Smallwood also dismissed Bobby McLaurin from the underlying state court suit because of failure to prosecute.
[2] See the block quote from First Options, supra, for the reasons for this presumption.