**Lustfield v. Milne**

*Harry F. Kunselman,* for plaintiff.
*Paul Yagelski,* for defendant.

WETTICK JR., *J.,* October 29, 2008—Defendants' preliminary objections to plaintiff's first amended complaint are the subject of this opinion and order of court. These preliminary objections raise an issue that the Pennsylvania appellate courts have never addressed: whether an arbitration clause that provides for arbitration

pursuant to the Commercial Rules of the American Arbitration Association incorporates Rule 7 of the Commercial Rules which provides for the arbitrator to determine disputes over the scope of the arbitration clause.

## PLAINTIFF'S FIRST AMENDED COMPLAINT

The facts, as described in plaintiff's first amended complaint, are as follows: John Milne and plaintiff had multiple discussions in May and June 2004 about a new business venture. It was agreed that plaintiff would be a partner in the venture and that Mr. Milne and plaintiff would share management responsibilities over the new business.

In May 2004, John Milne arranged for the formation of Milne LLC, t/d/b/a JKMilne Asset Management (Milne LLC), but no membership interests were issued, no manager was elected, and no operating agreement was prepared.

Between June and August 2004, Mr. Milne decided, without determining percentages of ownership or control, that Harry Milne (defendant's brother), Joseph Kotrozo and Steven Doyle would also be partners.

Milne LLC officially opened for business on August 2, 2004. While a determination as to percentages of ownership still had not been made, Mr. Milne advised plaintiff that she would have greater interests and a greater role than the individuals identified in the prior paragraph of this opinion.

Between August 2004 and November 4, 2004, Mr. Milne caused Milne LLC to retain the services of a law firm to prepare a proposed limited liability company

agreement (LLC agreement) with terms and conditions established by Mr. Milne.

As of early November 2004, plaintiff had, based on her discussions with Mr. Milne, devoted five months of full-time professional effort and services toward the business. In early November, Mr. Milne furnished the proposed LLC agreement to plaintiff. Under the proposed agreement, Mr. Milne and plaintiff would be the only equity holders.

At a February 2005 meeting, plaintiff signed a subscription agreement under which she paid $10,000 (through a $10,000 promissory note payable to Milne LLC) for 14 Class A voting units and 20 percent of the Class B nonvoting units of Milne LLC. Mr. Milne received the remaining 86 Class A voting units issued by Milne LLC.

At this meeting, plaintiff informed Mr. Milne that she did not agree with the proposed LLC agreement. She disagreed with the nature of her ownership, the degree of control Mr. Milne could exercise under the LLC, and the restrictions on transfers of units. To persuade plaintiff to sign the LLC agreement, Mr. Milne promised plaintiff that if he decided to bring in new partners in the future, he would do so by selling his own voting units to the new partners rather than by issuing additional voting units. Plaintiff signed the LLC agreement in reliance upon this promise that Mr. Milne would not dilute her ownership interest.[1]

---

1. This agreement, executed in February 2005, was dated August 9, 2004. In this opinion, I refer to the agreement as the February 2005 LLC agreement.

Plaintiff alleges that beginning June 2004, Mr. Milne has regularly used Milne LLC funds for personal expenses. He hired his son-in-law for a position that was not needed and for which he had no qualifications. Books and records show loans made by Mr. Milne to Milne LLC that were actually payments of Mr. Milne's personal expenses. Plaintiff also alleges that Mr. Milne improperly acquired Mr. Kotrozo's Class B nonvoting units when Mr. Kotrozo resigned, rather than offering the units to Milne LLC or to any of the remaining holders of voting or nonvoting units.

In May or June 2006, Mr. Milne caused Milne LLC to issue 10 additional Class A voting units to his brother (*i.e.,* these were newly issued units). His brother never paid for these units. Shortly thereafter, his brother left Milne LLC and these units were purchased by Mr. Milne.

On June 29, 2007, Mr. Milne requested plaintiff to sign a document purporting to ratify Mr. Milne's acquisition of his brother's Class A voting units. She refused. On July 23, 2007, Mr. Milne terminated plaintiff's employment with Milne LLC.

Subsequently, Milne LLC furnished to plaintiff a second amended and restated LLC agreement, effective February 28, 2008, which created a category of "passive owner" and permitted Milne LLC to purchase the Class A and Class B units of any passive owner for the fair market value of the units as of the last day of the end of the calendar quarter immediately preceding the date of the notice furnished to the passive owner of Milne LLC's intentions to purchase the passive owner's units. (Section

8.5(a).) At the same time, plaintiff received a letter notifying her of the intent of Milne LLC to purchase her units at their December 31, 2007 values.

Plaintiff's first amended complaint raises the following counts:

### Count I—Declaratory Relief—Both Defendants

Plaintiff requests this court (1) to declare that the February 2005 LLC agreement which she signed is not enforceable because it is a one-sided agreement that purports to give Mr. Milne the unilateral ability to amend the terms of the agreement and (2) if the February 2005 LLC agreement is enforceable in whole or in part, to declare that the February 29, 2008 purported buyout letter is not enforceable.

### Count II—Declaratory Relief—Both Defendants

Plaintiff seeks a declaration that Mr. Milne usurped corporate opportunities by obtaining the units of his brother and of Mr. Kotrozo.

### Count III—Action for Accounting—Both Defendants

This count is based on allegations that Mr. Milne has engaged in numerous acts of self-dealing and usurpation of corporate opportunities. The relief sought includes an order that Mr. Milne disgorge to Milne LLC all funds and property determined to be assets of Milne LLC.

### Count IV—Breach of Contract—Milne LLC

Plaintiff alleges that under her employment agreement, she has not been paid the full amount that she is owed.

*Count V—Breach of Contract—Milne LLC*

Plaintiff alleges that she was promised payments of $80,000 that were not made, on account of her status as an owner of Class A units.

*Count VI—Quantum Meruit—Both Defendants*

Plaintiff seeks the value of the services she provided in the startup and expansion of Milne LLC between its infancy and the present. This claim is based on an allegation that plaintiff provided these services under circumstances in which it was reasonable to expect plaintiff to be compensated for the services.

*Count VII—Unjust Enrichment—Both Defendants*

Plaintiff alleges that she provided services far in excess of what plaintiff received in the form of equity and monetary payments. This occurred because Mr. Milne shut plaintiff out of the business at a time when she would begin to reap the value of her ownership interests because of the business' growth.

## DEFENDANT'S PRELIMINARY OBJECTIONS ARBITRATION AGREEMENT

The February 2005 LLC agreement, the first amended LLC agreement effective July 1, 2007, and the second amended agreement effective February 28, 2008 contain the following arbitration clause:

"10.10 *Arbitration.* Except as provided in sections 5.11 and 10.5 hereof, each of the members hereby waive any right to a court (including jury) proceeding and instead

agree to submit any dispute over the application, interpretation, enforcement, or any other aspect of this agreement to confidential, final, and binding arbitration consistent with the Commercial Rules of the American Arbitration Association."

Plaintiff contends that this clause is not enforceable because the entire February 2005 LLC agreement is unenforceable. Defendants contend that this is a matter for the arbitrator to decide.

Plaintiff contends that even if the arbitration clause is enforceable, the claims raised in plaintiff's first amended complaint are outside the scope of the arbitration clause. Defendants contend that disputes over the scope of the arbitration clause are to be decided by the arbitrator.

I first consider the issue of whether this court or the arbitrator considers the claim that the entire February 2005 LLC agreement is not enforceable. In her complaint, plaintiff does not allege that the arbitration clause is unconscionable; she argues that the entire LLC agreement that includes the arbitration clause may not be enforced for the reasons set forth in paragraph 124(d)-(f) of plaintiff's first amended complaint:

"(d) No consideration supported the one-sided terms that favor defendant Milne;

"(e) The document lacks mutuality of obligation that would be necessary to make the document an enforceable contract; and

"(f) The document purports to give Milne the unilateral ability to amend the terms of the document without the consent of any other signatories thereto."

Plaintiff contends that a court cannot enforce an arbitration clause in an agreement without first determining the claim that the entire agreement should not be enforced. This contention is not supported by the case law.

The February 2005 LLC agreement involves interstate commerce so defendants' request to compel arbitration is governed by the Federal Arbitration Act.[2] The Federal Arbitration Act holds that a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, is a matter for the arbitrator. *Buckeye Check Cashing Inc. v. Cardegna,* 546 U.S. 440, 126 S.Ct. 1204 (2006); *Salley v. Option One Mortgage Corp.,* 592 Pa. 323, 338, 925 A.2d 115, 124 (2007). Also, assuming that the Federal Arbitration Act does not apply, I agree with plaintiff that Pennsylvania law applies (*i.e.,* the law that would apply in the absence of a jurisdictional clause within a contract should apply to a challenge to the contract as a whole containing a jurisdiction clause). Under Pennsylvania law the arbitrator, rather than the court, addresses a challenge to the validity of the entire agree-

2. The Federal Arbitration Act applies to any agreement affecting interstate commerce. *Allied-Bruce Terminix Co, Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834 (1995). This Act applies to the February 2005 LLC agreement because this involved a business affecting interstate commerce. Section 1.3(a) of the agreement provides that the purpose of the company shall be to act as a SEC 40 Act investment advisor, focusing on institutional client bond portfolio management, and act as marketer of other investment management services.

Delaware law does not apply because a generic choice of law provision is insufficient to support a finding that the parties intended to opt out of the FAA standards. *Roadway Package System Inc. v. Kayser,* 257 F.3d 287, 296 (3d Cir. 2001), *abrogated on other grounds by Hall Street Associates LLC v. Mattel Inc.,* 128 S.Ct. 1396 (2008).

ment. *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 331 A.2d 184 (1975).

I now consider defendants' position that the arbitrator rather than the courts shall decide the merits of plaintiff's contention that counts within her complaint do not come within the scope of the arbitration clause. Case law holds that courts shall address disputes over the scope of an arbitration clause (*i.e.,* what may be arbitrated) unless the parties have explicitly agreed to submit disputes over the scope of the arbitration clause to arbitration. See *Howsam v. Dean Witter Reynolds Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 591 (2002) ("The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the *'question of arbitrability,'* is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' *AT&T Technologies Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (emphasis added)."). Also see, *AT&T Technologies Inc. v. Communications Workers of America, supra,* 475 U.S. at 649, 106 S.Ct. at 1418. ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.")

In *First Options of Chicago Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920 (1995), the United States Supreme Court considered the role of the trial court in reviewing a ruling of an arbitrator deciding arbitrability. The court held that, unlike other rulings of arbitrators which can be set aside only in narrow circumstances, the review of a ruling on whether the parties have agreed to arbitrate

the arbitrability questions shall be decided de novo. This review shall be governed by applying the standard enunciated in *AT&T Technologies* that there be clear and unmistakable evidence that parties agree to arbitrate arbitrability.

The court explained the reason for the difference in treatment where the court is reviewing *arbitrability:*

"But, this difference in treatment is understandable. The latter question arises when the parties have a contract that provides for arbitration of some issues. In such circumstances, the parties likely gave at least some thought to the scope of arbitration. And, given the law's permissive policies in respect to arbitration, see *e.g., Mitsubishi Motors, supra,* at 626, 105 S.Ct. at 3353, one can understand why the law would insist upon clarity before concluding that the parties did *not* want to arbitrate a related matter. See Domke section 12.02, p. 156 (issues will be deemed arbitrable unless 'it is clear that the arbitration clause has not included' them). On the other hand, the former question—the 'who (primarily) should decide arbitrability' question—is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. Cf. Cox, *Reflections Upon Labor Arbitration,* 72 Harv.L.Rev. 1482, 1508-1509 (1959), cited in *Warrior & Gulf,* 363 U.S. at 583 n.7, 80 S.Ct. at 1353 n.7. And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that

power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide. *Id.* See generally, *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 219-20, 105 S.Ct. 1238, 1241-42, 84 L.Ed.2d 158 (1985) (Arbitration Act's basic purpose is to 'ensure judicial enforcement of privately made agreements to arbitrate')." 514 U.S. at 945, 115 S.Ct. at 1924-25.

In this case, the arbitration clause does not include language that clearly informs plaintiff that she could be forced to arbitrate arbitrability. In fact, it appears not to address the issue of who decides the scope of the arbitration clause, in which event the court does so.

However, defendants raise the following argument (defendants' supplemental brief at 7-9): The arbitration clause refers to an agreement to submit those disputes described in the agreement to "confidential, final and binding arbitration consistent with the Commercial Rules of the American Arbitration Association." Rule 7 of the AAA Commercial Rules states that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." Rule 7 is, by incorporation, a part of the arbitration clause.

I reject this argument because I cannot assume that plaintiff was aware of or even considered the possibility that the reference to the Commercial Rules of the American Arbitration Association expanded the scope of matters that must be arbitrated.[3] The typical arbitration clause

---

3. LLC agreement does not attach Rule 7 to the agreement or describe its contents.

addresses two issues: it identifies matters that will be arbitrated and it identifies the entity or person that will serve as the arbitrator. It is reasonable to construe the arbitration clause as addressing these two issues separately. Where the first portion of an arbitration agreement addresses the scope of the agreement, a party to the agreement would have no reason to believe that a later portion identifying the entity that will serve as the arbitrator has anything to do with what is arbitrable.

In addition, what is arbitrable is a matter for the parties to decide. Thus, one would not anticipate that it would be addressed in the rules of an entity that will serve as the arbitrator.

I recognize that Federal Courts of Appeals and Federal District Courts have ruled that a clause in an arbitration clause stating that the claims shall be resolved by binding arbitration in accordance with the Commercial Rules of the American Arbitration Association incorporates into the arbitration provision all rules of procedure of the AAA, including Rule 7. See *Citifinancial Inc. v. Newton,* 359 F. Supp.2d 545 (S.D. Miss. 2005), and cases cited therein. The rationale for the ruling is that a party cannot sign a document which states that the AAA procedures will govern the dispute and later say the procedures do not apply.

This is not following this case law because it permits a party to obtain arbitration as to the scope of the arbitration clause without using language that clearly informs the other party that it is agreeing to arbitrate arbitrability. This case law is contrary to *First Options of Chicago Inc.* and other United States Supreme Court case law

recognizing the principle that a party can be forced to arbitrate arbitrability only if there is clear and unmistakable evidence that both parties intended to arbitrate arbitrability.

If I rule in defendants' favor, I am stating that plaintiff is bound by Rule 7 because plaintiff should have assumed (1) the AAA arbitration rules might discuss the scope of the role of the arbitrator vis-à-vis the court and (2) a court might construe the arbitration clause as incorporating any provisions in the AAA arbitration rules governing the scope of the arbitrator's authority. This turns upside down the case law's requirement that there be clear and unmistakable evidence that "the parties objectively revealed an intent to submit the arbitrability issue to arbitration." *First Options, supra,* 514 U.S. at 944, 115 S.Ct. at 1924.

If a drafting party is seeking an agreement of the parties to an arbitration clause which provides for the arbitrator to decide arbitrability, it is a simple matter to expressly say so in the proposed arbitration clause. This provides clarity and the opportunity for another party to object if this other party is unwilling to have the scope of an arbitration clause decided by an arbitrator. There is no reason for courts to create a body of law that imposes a duty to arbitrate arbitrability where this may not have been the intention of one or more of the parties to an agreement, because the drafting party through one sentence can clearly state that the arbitrator shall decide arbitrability disputes.

In *First Options,* the court adopted a standard that was easy for the parties to an arbitration agreement and for the courts to apply: courts will decide the scope of an

arbitration clause unless the language of the arbitration clause itself clearly states that the parties intend for the arbitrator to decide arbitrability. The case law finding an agreement to arbitrate arbitrability based solely on a reference to the AAA rules undermines the protections afforded parties to arbitrate arbitrability in the courts.[4]

For these reasons, I agree with plaintiff that this court may decide whether or not the counts within her first amended complaint are within the scope of the arbitration clause.

I next consider what counts in plaintiff's complaint come within the arbitration agreement which covers "any dispute over the application, interpretation, enforcement, or any other aspect of this agreement." It is plaintiff's position that each count in her amended complaint falls outside the scope of this agreement.

## Count I—Request for Declaratory Relief

Plaintiff's request for a declaration that the entire February 2005 LLC agreement is one-sided and unenforceable is governed by the arbitration clause because it involves the "enforcement" of the February 2005 LLC agreement. Also, the request that the court declare that the February 29, 2008 purported buyout agreement is not enforceable is covered by the arbitration clause because the merits of this request for relief involve an interpretation of the initial

---

4. In the portion of the *First Options* opinion quoted at page 479 of this opinion, the Supreme Court described the question of who shall decide arbitrability as "rather arcane" and recognized that a party "might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers."

and amended LLC agreements and a determination as to the enforceability of these agreements.

## Count II—Declaratory Relief

A declaration that Mr. Milne improperly obtained the units of his brother and Mr. Kotrozo involves an "interpretation" of the February 2005 LLC agreement and, thus, is covered by the arbitration clause.

## Count III—Action for Accounting

Plaintiff alleges that Mr. Milne violated his duty to account accurately to the members of Milne LLC, that plaintiff requires full access to the financial records of Milne LLC to determine their accuracy, and that the inaccuracy of these financial records affects the value of plaintiff's ownership interests and the amount of profits to which she is entitled. This count is covered by the arbitration clause because it is a dispute over Mr. Milne's obligations under the LLC agreements and the enforcement of these obligations.

## Count IV—Breach of Contract

Plaintiff alleges that under her employment agreement, she was not paid the full amount she was owed. The arbitration clause does not cover employment agreements between Milne LLC and plaintiff. Consequently, plaintiff may proceed with this claim.

## Count V—Breach of Contract

This count is based on an alleged agreement between Mr. Milne and plaintiff as to payments that they would

receive as owners of Class A voting units. Plaintiff alleges that the agreement provides for annual payments to continue as long as both plaintiff and Mr. Milne are members of Milne LLC. There is a dispute involving the interpretation of the initial and amended LLC agreements as to whether plaintiff is still a member. Thus, this dispute is covered by the arbitration clause because it involves the application and interpretation of the LLC agreements.

## Count VI—Quantum Meruit

Plaintiff alleges that she is entitled to be compensated for the reasonable value of the services she provided in the startup and operation of Milne LLC from its infancy to the present. This is not barred by the arbitration clause because it is not based on any provisions within the initial or amended LLC agreements

## Count VII—Unjust Enrichment

Plaintiff alleges that she provided uncompensated services to Milne LLC which far exceed what she has received in the form of equity and monetary payments. Her efforts added value to ownership interests in Milne LLC. When Milne LLC was reaching levels of success and performance that would make it a lucrative business, Mr. Milne shut plaintiff out of the business.

If this count is based on allegations that plaintiff was wrongfully forced out of the business, it is a dispute involving the interpretation, enforcement, or other aspect of the LLC agreements. Thus, it is covered by the arbitration clause.

However, it appears that plaintiff is not seeking relief in her capacity as a shareholder or employee. Instead, she appears to be alleging that if Mr. Milne chose to shut her out of the business at a time it was reaching levels of success and performance that would make it a lucrative business, she is entitled to the reasonable *value of her* services that Milne LLC received and for which she has not been compensated. This latter claim is outside the scope of the arbitration clause because it does not involve any aspect of the LLC agreements.

In summary, defendants' preliminary objections raising the obligation of plaintiff to arbitrate are sustained as to Counts I, II, III, and V and overruled as to Counts IV, VI, and VII.

## DEFENDANTS' PRELIMINARY OBJECTIONS—DEMURRER

Defendants have filed preliminary objections in the nature of a demurrer as to Counts VI and VII. Because of my ruling that these counts are not covered by the arbitration clause, I will now consider the merits of these preliminary objections.

Count VI is labeled *Quantum Meruit* and Count VII is labeled *Unjust Enrichment.* However, unjust enrichment is a synonym for quantum meruit. *Northeast Fence & Iron Works Inc. v. Murphy Quigley Co. Inc.,* 933 A.2d 664, 667 (Pa. Super. 2007). Consequently, I look to the case law governing claims for unjust enrichment.

In *Wilson Area School District v. Skepton,* 586 Pa. 513, 520, 895 A.2d 1250, 1254 (2006), the Pennsylvania Supreme Court, citing a long line of rulings of the Penn-

sylvania Commonwealth and Superior Courts, ruled that the doctrine of unjust enrichment is inapplicable where the relationship between the parties is founded upon a contract:

"We begin our analysis by considering whether the school district is entitled to restitution of the permit fee refund pursuant to the doctrine of unjust enrichment. As this court has recognized, the doctrine of unjust enrichment contemplates that '[a] person who has been unjustly enriched at the expense of another must make restitution to the other.' See *e.g., Binns v. First National Bank of California, Pennsylvania,* 367 Pa. 359, 372, 80 A.2d 768, 775 (1951) (quoting Restatement (First) of Restitution §1 (1937)). With that said, it has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.' *Third National Bank & Trust Company of Scranton v. Lehigh Valley Coal Company,* 353 Pa. 185, 193, 44 A.2d 571, 574 (1945); see also, *Schott v. Westinghouse Electric Corporation,* 436 Pa. 279, 290, 259 A.2d 443, 448 (1969); *Wingert v. T.W. Phillips Gas & Oil Company,* 398 Pa. 100, 105, 157 A.2d 92, 94 (1959) ('[The doctrine of unjust enrichment] applies only to situations where there is no legal contract'); *Durham Terrace Inc. v. Hellertown Borough Authority,* 394 Pa. 623, 148 A.2d 899 (1959). While it does not appear that this court has expounded upon this rule of law, it has been recognized that this bright-line rule not only has 'a distinguished common-law pedigree, but it also derives a great deal of

justification from bedrock principles of contract law.' *Curley v. Allstate Insurance Company,* 289 F. Supp.2d 614, 620 (E.D. Pa. 2003). Moreover, as the *Curley* court noted, '[this] bright-line rule also has deep roots in the classical liberal theory of contract. It embodies the principle that parties in contractual privity . . . are not entitled to the remedies available under a judicially-imposed quasi[-]contract [*i.e.,* the parties are not entitled to restitution based upon the doctrine of unjust enrichment] because the terms of their agreement (express and implied) define their respective rights, duties and expectations.' *Id.* at 520-21.''

Defendants contend that this case law governs plaintiff's claims raised in Counts VI and VII. I agree.

Prior to February 2005, plaintiff performed services because Mr. Milne had promised to include her as an owner in the new business (which he did). After February 2005, plaintiff performed services for Milne LLC as an employee and an owner who would be compensated in accordance with the provisions of the February 2005 LLC agreement and, later, also in accordance with the provisions of an employment agreement. Thus, the relationship between the parties is founded upon express agreements.

Plaintiff did not anticipate that she would receive the full value of her services until the business grew. When this occurred, she expected her interests in the business to be of significant value. Plaintiff's expectations will not be realized (unless she prevails on her other claims) because the February 2005 LLC agreement did not sufficiently protect her interests. However, an unjust enrich-

ment claim cannot be based on harsh provisions in a contract.[5]

For these reasons, I enter the following order of court:

## ORDER

On this October 29, 2008, it is hereby ordered that:

(1) proceedings are stayed as to Counts I, II, III and V pending arbitration;

(2) defendants' preliminary objections in the nature of a demurrer as to Counts VI and VII are sustained and these counts are dismissed; and

(3) in answering plaintiff's amended complaint, defendants shall respond only to those paragraphs within the complaint that are clearly relevant to Count IV.

---

5. Should the arbitrator determine that the entire February 2005 LLC agreement is unenforceable, the dismissal of Counts VI and VII may be reconsidered.