2012 Ark. 408

**HPD, LLC, Appellant**

v.

**TETRA TECHNOLOGIES,
INC., Appellee.**

**No. 11–1299.**

Supreme Court of Arkansas.

Nov. 1, 2012.

Stein Rey LLP, by: Steven G.M. Stein, Carl L. Popovsky, and Alexander M. Kipnis; and Shackleford, Phillips & Ratcliff, P.A., El Dorado, by: Brian H. Ratcliff, for appellant.

Fulbright & Jaworski L.L.P., by: E. Lee Haag, Joy M. Soloway, and Carter Dugan; Friday, Eldredge & Clark, by: Jeff Moore; and Thomas & Hickey LLP, El Dorado, by: Floyd M. Thomas, Jr., for appellee.

COURTNEY HUDSON GOODSON, Justice.

Appellant HPD, LLC (HPD) appeals the order entered by the Union County Circuit Court denying its motion to compel arbitration of claims brought against it by appellee TETRA Technologies, Inc. (TETRA). For reversal, HPD contends that the circuit court erred in ruling that threshold issues of arbitrability would be decided by the court, rather than through arbitration. On cross-appeal, TETRA asserts that the circuit court erred by not yet deciding the gateway issues. We reverse and remand for the entry of an order compelling arbitration of all issues. Accordingly, this disposition renders the cross-appeal moot.

As shown by the pleadings in this case, HPD is in the business of designing and selling specialized industrial equipment for use in chemical processing plants, water treatment facilities, and other large-scale industrial settings. TETRA is a producer, marketer, and distributer of chemicals, chiefly calcium chloride. Both are Delaware corporations, but HPD has its head-

quarters in Plainfield, Illinois, while TE-TRA's principal place of business is in The Woodlands, Texas. In late 2006, the parties began negotiations regarding TE-TRA's plans to construct a chemical processing plant near El Dorado, Arkansas, to produce calcium chloride, sodium chloride, and magnesium oxide from brine. After pilot testing by HPD produced satisfactory results, the parties entered into a "Transparent Execution Engineering & Equipment Supply Agreement" (contract) in November 2007 for HPD to supply equipment to be used in TETRA's proposed facility in El Dorado. The contract contains a provision for binding arbitration. Construction of the plant began in 2008 and has been completed. TETRA paid HPD in full for its services, a total of $34,540,000.

In March 2011, TETRA filed its initial complaint against HPD in Union County Circuit Court, alleging that the equipment designed by HPD did not perform to expectations. In lieu of filing an answer, HPD moved to dismiss and to compel arbitration in accordance with the arbitration provisions contained in the contract. By its second amended complaint, TETRA asserted causes of action in negligence, gross negligence, professional malpractice, constructive fraud, and breach of fiduciary duty. For these alleged wrongs, it sought both direct and consequential damages. TETRA also sought a declaratory judgment that the contract and the embedded arbitration clause were illegal and thus void because HPD performed engineering services without obtaining a certificate of authorization as allegedly required by Arkansas Code Annotated section 17–30–303 (Supp.2011).

In support of its motion to compel arbitration, HPD asserted that the arbitration clause required arbitration of "[a]ll claims, disputes or other controversies arising out of, or relating to, this Agreement." It

also pointed out that the arbitration clause incorporated by reference the Construction Industry Arbitration Rules of the American Arbitration Association (AAA Rules), which grants an arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" and "the power to determine the existence or validity of a contract of which an arbitration clause forms a part." Based on the "broad" language of the arbitration clause and the terms of the AAA Rules, HPD argued that all claims and issues, including questions of arbitrability, were to be decided in arbitration.

In resisting arbitration, TETRA maintained that the contract was illegal and unenforceable because HPD had provided engineering services without a certificate of authorization. Citing *Sarkco v. Edwards*, 252 Ark. 1082, 1086, 482 S.W.2d 623, 625 (1972), it argued that the arbitration clause itself was invalid because it was "auxiliary to, or promotive of" an illegal contract. TETRA also contended that, because HPD did not have a certificate of authority, it lacked the capacity to enter into a valid contract. Further, it asserted that the severability clause of the contract, which states that "[i]f any part, term, or provision of this Agreement is held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the ... remaining parts ... shall not be affected," contemplates that a court of competent jurisdiction is to determine whether any term of the contract is illegal, invalid, or unenforceable. TETRA stressed that the "Default and remedies" provision of the contract also contemplated court action by allowing either party, where the other commits a material breach of contract, to "avail itself of any and all rights and remedies available at law or in equity." It also noted that the arbitration clause pro-

hibited the arbitrators from awarding punitive and consequential damages and from amending the contract, and it argued that the provision's reference to "all" disputes must be tempered by the express limitation on the arbitrators' authority. TETRA took the position that these preliminary issues of arbitrability must be determined by the circuit court.

Following briefing of the arbitration issue, TETRA filed a motion for partial summary judgment on the declaratory aspect of the amended complaint in which it sought a determination that the contract and arbitration clause were void for illegality. It maintained that there was no dispute as to material fact that HPD provided engineering services without a certificate of authority and argued that, as a matter of law, the contract and the arbitration clause itself, as promotive and auxiliary to an illegal contract, were void. It also urged that HPD lacked the capacity to enter into the contract without a certificate of authority.

On September 27, 2011, the circuit court held a hearing on the motion to compel arbitration. After the parties' oral presentations, the court took the matter under advisement and subsequently issued an order on November 4, 2011. The circuit court ruled in TETRA's favor that it would determine the threshold issues of arbitrability before deciding whether the case must proceed to arbitration. The court directed HPD to file an answer to the amended complaint and a response to TETRA's motion for summary judgment. From the circuit court's order, HPD filed a timely notice of appeal, and TETRA filed a timely notice of cross-appeal.

■ Before this court, HPD argues that the circuit court erred by not compelling arbitration of TETRA's tort claims and the issues TETRA raised regarding arbitrability. It contends that the scope of the arbitration clause is expansive to include all claims, disputes, and controversies arising out of or relating to the contract. Citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), it asserts that the incorporation of the AAA Rules manifests the parties' "clear and unmistakable" intent for arbitrators to rule on issues of arbitrability, including TETRA's arguments concerning the existence, validity, and scope of the arbitration agreement. TETRA responds that the severability clause, the limitation on the arbitrators' authority, and the default clause combine to negate the notion that the parties agreed to arbitrate issues of arbitrability.

■ An order denying a motion to compel arbitration is an immediately appealable order. Ark. R.App. P.-Civil 2(a)(12); Ark.Code Ann. § 16–108–228(1) (Supp. 2011); *see IGF Ins. Co. v. Hat Creek P'ship,* 349 Ark. 133, 76 S.W.3d 859 (2002). We review a circuit court's order denying a motion to compel arbitration de novo on the record. *S. Pioneer Life Ins. Co. v. Thomas,* 2011 Ark. 490, 385 S.W.3d 770.

■ The parties in this case agree that the Federal Arbitration Act (FAA) applies to this dispute. Congress enacted the FAA, 9 U.S.C. §§ 1–16, to overcome judicial resistance to arbitration. *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). The Act establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. *Preston v. Ferrer,* 552 U.S. 346, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (citing *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). The FAA, which rests on Congress's authority under the Commerce Clause, does not simply supply a procedural framework applicable in federal courts; it also calls for

the application, in state as well as federal courts, of federal substantive law regarding arbitration. *Id.*

■ Section 2, the "primary substantive provision of the Act," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), provides,

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The FAA thereby places arbitration agreements on equal footing with other contracts, and requires courts to enforce them according to their terms. *Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. 63, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010).

■ In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered. First, is there a valid agreement to arbitrate between the parties? Second, if such an agreement exists, does the dispute fall within its scope? *See AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In answering these questions, doubts about arbitrability must be resolved in favor of arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Further, the court (rather than the arbitrator) decides these questions of arbitrability, unless the parties clearly and unmistakably delegate that issue to the arbitrator. *First Options, supra.* Based on the principle that arbitration is a matter of contract, the question of "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter. *Id.* at 943, 115

S.Ct. 1920. According to the Supreme Court, an agreement to arbitrate a gateway issue is simply an additional antecedent agreement that the ⌐7party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. *Rent–A–Center, supra.* However, unlike the traditional presumption that favors arbitration, courts should not assume that the parties agreed to arbitrate arbitrability because "doing so might ... force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options,* 514 U.S. at 945, 115 S.Ct. 1920; *see also Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). Courts generally should apply ordinary state-law principles that govern the formation of contracts when deciding whether the parties agreed to arbitrate a certain matter, including arbitrability. *First Options, supra.*

In the present case, the dispute-resolution provision states that "[a]ll claims, disputes or other controversies arising out of, or relating to, this Agreement ... shall be initially submitted to a Senior Officer from each Party for resolution by mutual agreement between said officers." If that endeavor fails, the arbitration provision states,

> *Arbitration.* To the extent that any Dispute continues to exist after the consultation provided for in Paragraph 12.1 and to the exclusion of any court of law, either Party may refer the Dispute to arbitration, and all Disputes shall be resolved by such arbitration. The arbitration shall be conducted in a non-administered proceeding in Houston, Texas before three arbitrators in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. The award of the arbitra-

tors shall be final and binding and judgment upon the award may be entered in any court of competent jurisdiction. The arbitrators shall have no jurisdiction to hear claims for or authority to award punitive, treble, special, exemplary, incidental, indirect or consequential damages against either Party. The arbitrators shall not have the authority to modify or amend any term or provision of this Agreement, or make any ruling, finding, or award that does not conform to the terms and conditions of this Agreement. In deciding the dispute, the arbitrators shall apply the substantive law of the State of Texas, which govern this Agreement, without regard to conflict of laws principles of that jurisdiction.

This provision references the AAA Rules of the construction industry, which provide as follows:

R–9 Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of the contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

Further, Rule R–1(a) states that "[t]he parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ... under its Construction Industry Arbitration Rules[.]"

In its argument, HPD relies on the decision in *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205 (2d Cir.2005), to argue that incorporating AAA Rules into an arbitration clause that give the arbitrator the power to decide issues of arbitrability constitutes clear and unmistakable evidence to commit issues of arbitrability to arbitration. There, the arbitration clause stated that the controversy would be resolved "in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Those rules, like the present case, granted the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." The Second Circuit held that, when parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. A majority of courts that have considered the issue have held that when a contract contains or incorporates this type of language, it clearly and unmistakably vests the arbitrator, and not the court, with the authority to decide which issues are arbitrable. *E.g., Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671 (5th Cir.2012); *Fallo v. High–Tech Inst.*, 559 F.3d 874 (8th Cir.2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed.Cir.2006); *Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship.*, 432 F.3d 1327 (11th Cir.2005); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (1st Cir.1989); *Yellow Cab Affiliation, Inc. v. New Hampshire Ins. Co.*, 2011 WL 307617 (N.D.Ill.2011); *Bishop v. Gosiger, Inc.*, 692 F.Supp.2d 762 (E.D.Mich.2010); *Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys., Inc.*, 2009 WL 86704 (E.D.La.2009); *Citifinancial, Inc. v. Newton*, 359 F.Supp.2d 545 (S.D.Miss. 2005); *Brandon, Jones, Sandall, Zeide,*

*Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677 (S.D.Fla.2001). *But see, e.g., Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780 (10th Cir.1998) (holding that the parties did not specifically intend to submit the question of arbitrability to an arbitrator despite a reference to the AAA Rules in the arbitration provision); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76 (Del.2006) (adopting the majority rule but declining to apply it because the arbitration clause did not refer all disputes to arbitration).

TETRA, however, argues that the parties did not clearly and unmistakably agree to arbitrate issues of arbitrability even though the AAA Rules were incorporated. It refers to the severability clause to argue that the parties contemplated that questions of enforceability might be decided in a court of law. It further argues that the default provision, allowing resort to all remedies at law or in equity, and the limitation placed on the arbitrators' authority in the arbitration clause also detract from such clear and unmistakable intent. TETRA suggests that, despite the delegation of authority found in the AAA Rules, the ambiguity created by these provisions diminishes any clear and unmistakable intent for an arbitrator to decide issues of arbitrability.

TETRA's argument, as it relates to the severability clause, finds some support in appellate decisions from California and Alabama. *See Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal.App.4th 1425, 140 Cal. Rptr.3d 38 (2012) (holding that a severability provision contained within the arbitration agreement created an ambiguity with the delegation provision, thus requiring the delegation provision to be construed most strongly against the drafting party); *Commercial Credit Corp. v. Leggett*, 744 So.2d 890 (Ala.1999) (holding that a sever-ability clause contained within the arbitration agreement created an ambiguity with the delegation provision such that there was no clear and unmistakable evidence of intent to arbitrate issues of arbitrability). On the other hand, the First Circuit has rejected the notion that a severability clause in a contract undermines the clear and manifest intent to arbitrate questions of arbitrability by reference to AAA Rules. In *Awuah v. Coverall North America, Inc.*, 554 F.3d 7 (1st Cir.2009), the arbitration agreement incorporated the American Arbitration Association's Rule 7 that gave the arbitrator the power to rule on his or her own jurisdiction. The district court had found that the severability clause in the contract, allowing other provisions to survive if a "court of competent jurisdiction" invalidated a provision of the contract, showed that the parties had not clearly and unmistakably agreed to submit jurisdictional issues to the arbitrator. In reversing, the First Circuit held that the inclusion of a severability clause in the contract was "too thin a basis" for concluding that the agreement's language evinced an intent to allow questions of arbitrability to be decided by a court when the AAA Rule stated plainly that the arbitrator may "rule on his or her own jurisdiction" including any objection to the "existence, scope, or validity of the arbitration agreement." The court concluded that "[t]his is about as 'clear and unmistakable' as language can get[.]" *Id.* at 11.

In the case at bar, our object is to ascertain the intention of the parties, not from particular words or phrases, but from the entire context of the agreement. *See Byme, Inc. v. Ivy*, 367 Ark. 451, 241 S.W.3d 229 (2006). It is well settled that a contract should be construed so that all of its parts are in harmony, if that is possible. *Asbury Auto. Used Car Ctr. v. Brosh*, 2009 Ark. 111, 314 S.W.3d 275. In

seeking to harmonize different clauses of a contract, we should not give effect to one to the exclusion of the other even though they seem conflicting or contradictory, nor adopt an interpretation which neutralizes a provision if the various clauses can be reconciled. *Ivy, supra* (quoting *Sturgis v. Skokos,* 335 Ark. 41, 977 S.W.2d 217 (1998)). Having considered the arguments presented, we are persuaded that the arbitration provision manifests a clear and unmistakable intent to arbitrate the questions of arbitrability raised by TETRA. The arbitration provision in this case states broadly the intent to arbitrate "[a]ll claims, disputes or other controversies arising out of, or relating to," the ₁₂contract. More specifically, it incorporates the AAA Rules, which expressly state that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Further, the arbitration clause provides for arbitration "to the exclusion of any court of law." As the First Circuit so determined in *Awuah, supra,* we also cannot conclude that the inclusion of a severability clause in the contract negates the plain manifestation of intent expressed in the delegation provision. Nor can we say that the default provision diminishes this clear intent because resort to "all rights and remedies" says nothing about the forum in which those remedies may be pursued. Furthermore, the limitation of the arbitrators' authority to preclude awards of certain damages mirrors, and is consistent with, another provision in the contract stating that the parties waived "all claims against each other ... for any consequential, incidental, indirect, special, exemplary or punitive damages[.]" Consequently, we hold that the circuit court erred by not honoring the parties' clear expression of intent to arbitrate the existing disputes. There-

fore, we reverse and remand for the entry of an order compelling arbitration.

Reversed and remanded.