SLIP OPINION



Cite as 2014 Ark. 223

# SUPREME COURT OF ARKANSAS

No. CV–13–890

| | |
|---|---|
| BANK OF THE OZARKS, INC., AND BANK OF THE OZARKS<br><br>APPELLANTS<br><br>V.<br><br><br>ROBERT WALKER, ANN B. HINES, AND JUDITH BELK<br><br>APPELLEES | **Opinion Delivered** May 15, 2014<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT, [NO. CV-11-777]<br><br>HONORABLE SANDY HUCKABEE, JUDGE<br><br><u>REVERSED AND REMANDED; COURT OF APPEALS' OPINION VACATED</u>. |

**JIM HANNAH, Chief Justice**

Appellants, Bank of the Ozarks, Inc., and Bank of the Ozarks (the "Bank") appeal the denial of a motion to compel arbitration of a class-action complaint filed by appellees, Robert Walker, Ann B. Hines, and Judith Belk. The circuit court denied the motion on the ground that the arbitration provision in the account agreement between the Bank and the appellees was unconscionable. The Bank originally appealed to the court of appeals, which reversed and remanded for entry of an order compelling arbitration. *See Bank of the Ozarks, Inc. v. Walker*, 2013 Ark. App. 517. Appellees petitioned this court for review, and we granted the petition. When we grant a petition for review, we consider the appeal as though it had originally been filed in this court. *E.g.*, *Garrett v. Dir., Dep't of Workforce Servs.*, 2014 Ark. 50, at 1. On appeal, the Bank contends that the arbitration provision is enforceable and, therefore, the circuit court erred in denying its motion to compel arbitration. We reverse and

SLIP OPINION

remand the circuit court's order and vacate the opinion of the court of appeals.

Appellees filed a class-action complaint against the Bank, asserting claims for breach of contract and breach of the covenant of good faith and fair dealing, unconscionability, conversion, unjust enrichment, and violations of the Arkansas Deceptive Trade Practices Act arising from the Bank's alleged practice of manipulating and reordering customers' checking-account debit transactions to maximize the number of overdrafts and, thus, the amount of overdraft fees charged to each customer. Appellees alleged that the Bank provided them and all members of the proposed class with an account agreement and attached to their complaint a document entitled "Consumer Deposit Account Agreement" ("Deposit Agreement"). Appellees alleged that the Deposit Agreement was a "representative copy" of the account agreement provided to them by the Bank and that it did not adequately disclose the Bank's improper manipulation of transactions of overdraft-assessment practices. The Deposit Agreement included, inter alia, the following provisions:

> ORDER OF PAYMENT. You understand that when two or more checks are presented for payment on the same day, the law allows us to pay them in any order. For now, we have chosen to pay them in serial number within transaction code order. We can, in good faith, choose a different order of payment after giving you any legally required notice.

> OVERDRAFTS. We do not have to let you overdraw the account. If we ever do, that does not mean we must continue to do so. You do not expect any notice of an overdraft beyond any normal periodic statement.

In response to the complaint, the Bank filed a motion to dismiss, or alternatively, a motion to stay the proceedings and compel arbitration pursuant to the Federal Arbitration Act (the "FAA"). The Bank contended that the circuit court should compel arbitration

because the Deposit Agreement attached to appellees' complaint contained the following arbitration provision:

> ARBITRATION. You or we may require that any controversy or claim relating to this agreement, or breach of it, be resolved through arbitration administered by the American Arbitration Association under its commercial rules. Judgment on any award rendered by the arbitrator may be entered in any court having jurisdiction.

In addition, the Bank attached to its response other exhibits, including the checking-account signature cards of appellees and two versions of account agreements.[1] In response to the Bank's motion, appellees contended that the circuit court should not compel arbitration because (1) the Bank had waived its right to arbitration by filing a comprehensive motion to dismiss; (2) not all of the Bank's account agreements contain an agreement to arbitrate and, thus, the circuit court may not compel arbitration where there is no agreement to arbitrate; and (3) the arbitration provision is unconscionable pursuant to Arkansas law and unenforceable in light of the American Arbitration Association's moratorium on arbitrations involving consumer-finance matters. The Bank responded, contending that it had not waived its right to arbitration because it had asserted that right in its first responsive pleading. In a surreply, appellees contended that the Deposit Agreement did not mandate arbitration because "it expressly provided for jurisdiction of this matter in the circuit court." In support, the appellees cited the following provisions:

> LAW, JURISDICTION, AND VENUE. The laws of Arkansas govern this agreement. The courts of that state have jurisdiction of any dispute in connection with this agreement. You agree that venue will be proper in the courts in the county

---

[1]These account agreements were not the same as the Deposit Agreement attached to appellees' complaint.

and city of our office where you signed or delivered this agreement.

WAIVER OF JURY TRIAL. You waive your right to a jury trial in any dispute with us. Such disputes may be tried before a judge only.

After a hearing and consideration of the pleadings filed, the circuit court ruled that the arbitration provision was unconscionable and thus unenforceable. Accordingly, the circuit court denied the Bank's motion to stay proceedings and compel arbitration.[2] The Bank now brings this interlocutory appeal.

An order denying a motion to compel arbitration is immediately appealable under Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2013). This court reviews an order denying a motion to compel de novo on the record, determining the issue as a matter of law. *E.g.*, *Gruma Corp. v. Morrison*, 2010 Ark. 151, at 4, 362 S.W.3d 898, 901.

Although an arbitration provision is subject to the FAA, courts look to state contract law to decide whether the parties' agreement is valid. *E.g.*, *DIRECTV, Inc. v. Murray*, 2012 Ark. 366, at 3, 423 S.W.3d 555, ___. In Arkansas, the same rules of construction apply to arbitration agreements as apply to agreements in general. *E.g.*, *Alltel Corp. v. Sumner*, 360 Ark. 573, 576, 203 S.W.3d 77, 79 (2005).[3] Thus, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Id.*, 203 S.W.3d at 79.

A threshold inquiry is whether a valid agreement to arbitrate exists; that is, whether

---

[2]In addition, the circuit court granted in part and denied in part the Bank's motion to dismiss, but those rulings are not relevant in this interlocutory appeal.

[3]The parties agree that Arkansas contract law applies in this case.

there has been mutual agreement, with notice as to the terms and subsequent assent. *Id.*, 203 S.W.3d at 80. We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Id.*, 203 S.W.3d at 80. If the court finds that a valid agreement to arbitrate exists, then the court must determine whether the dispute falls within the scope of the arbitration agreement. *E.g.*, *HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, at 6, ___ S.W.3d ___, ___.   Even if a court finds that an arbitration agreement exists and that the dispute falls within the scope of the arbitration agreement, the court may still declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *See, e.g.*, *BDO Seidman, LLP v. SSW Holding Co.*, 2012 Ark. 1, at 14, 386 S.W.3d 361, 370 (quoting Federal Arbitration Act, 9 U.S.C. § 2). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

In the instant case, although the parties disputed the existence of a valid arbitration agreement, the circuit court failed to make any findings regarding whether such an agreement existed. Rather, the circuit court denied the Bank's motion to compel based on appellees' defense of unconscionability. As previously noted, appellees denied the existence of a valid arbitration agreement in their response to the motion to compel and in their

SLIP OPINION

surreply. Moreover, at the hearing, counsel for appellees argued:

> I'd like to point out to the Court that while it's true that we attach something called the deposit agreement to the account, something that's an exemplar of what we believe our clients had, I want to point out, and I'm not sure ultimately what impact this will have, Your Honor, it's not executed, no one signed it, and, indeed, I can't know today, because I haven't had discovery, to know what the bank's practice was with respect to these so-called deposit agreements. Did they place them in front of the new customer at the bank and say, "Mr. Walker, or Ms. Hines, please sign this?"

> If that occurred, which would make it enforceable as between the parties who were signators to it, they haven't produced that, and we don't have that. If you look at each of the documents they've attached to their motion, they – – and I'm not even sure what they are. They may be exemplars or they may be somebody else's.

> If you look at exhibit three of their – – to their motion, which is the deposit agreement which they say applies here, it doesn't contain the signature of any of our clients and, indeed, it has someone else's name, a Stephanie – – I don't have it just in front of me, but if Your Honor would look at exhibit three, you will see that it contains someone else's name, not a signature, but it's actually typed in into one of the corners of the document with what appears to be an account number.

> . . . .

> [W]e don't even know with absolute certainty, which form of the contract, the so-called agreement, is applicable to each of the plaintiffs here. As you can imagine, when you have a banking relationship with a bank that may span a decade, the likelihood of your retaining the initial papers that were given to you nine or ten years ago and having them today is remote, number one.

> Number two, there may be – – in fact, we've already seen that there are different versions of this so-called agreement. What the Court respectfully I think has to do under Arkansas Rules of Civil Procedure is take the document that we've attached to our complaint and to use that as a basis to understand the breach of contract assertion that we've made here.

The Bank takes the position that the circuit court implicitly, if not expressly, found that there was a valid arbitration agreement. Without such a finding, however, we can only speculate about whether the circuit court considered this issue. It is possible that the circuit court assumed the existence of an arbitration agreement without deciding the issue.

6

Accordingly, we reverse and remand to the circuit court to determine, in the first instance, whether there is a valid agreement to arbitrate between the parties. If the circuit court finds that there is a valid agreement to arbitrate, then it must determine whether the dispute falls within the scope of the agreement. If the court finds that the dispute falls within the scope of the agreement, then it may consider whether appellees have a defense that may be applied to invalidate the agreement.

Reversed and remanded; court of appeals' opinion vacated.

BAKER, GOODSON, and HOOFMAN, JJ., dissent.

**COURTNEY HUDSON GOODSON, Justice, dissenting.** Because I believe the majority errs in the disposition of this case, I respectfully dissent. The majority improperly reverses and remands this case when it should affirm the circuit court's denial of the Bank's motion to compel arbitration. The majority, therefore, permits the Bank to have a second bite at the apple to carry its burden of proving that an agreement to arbitrate existed, despite the fact that a de novo review of the record in this case reveals that neither the Bank nor the appellees demonstrated that appellees received notice of, or assented to, an arbitration provision. In addition, the majority's approach blurs the line concerning which party has the burden of proving that an agreement to arbitrate existed in the first place. Therefore, I must respectfully dissent.

When a court is asked to compel arbitration, it is limited to deciding two threshold questions: (1) Is there a valid agreement to arbitrate between the parties? and (2) If such an agreement exists, does the dispute fall within its scope? *LegalZoom.com, Inc. v. McIllwain*, 2013

Ark. 370. A threshold inquiry is whether an agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice of the terms and subsequent assent. *Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005). The question of whether a dispute should be submitted to arbitration is a matter of contract construction. *Tyson Foods Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681 (2004); *Showmethemoney Check Cashers v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000); *International Union, United Auto., Aerospace & Agri. Implement Workers of Am. v. General Elec. Co.*, 714 F.2d 830 (8th Cir.1983). It is well settled that in order to make a contract there must be a meeting of the minds on all terms, using objective indicators. *DIRECTV, Inc. v. Murray*, 2012 Ark. 366; *see also Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003). This court employs an objective test for determining mutual assent, looking to objective indicators of assent and not subjective opinions. *Ward*, 354 Ark. 168, 118 S.W.3d 513. Both parties must manifest assent to the particular terms of the contract. *Alltel Corp*, *supra*. Finally, a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995).

For a party to assent to a contract, the terms of the contract, including an arbitration agreement, must be effectively communicated. *Alltel Corp.*, *supra*. The mere presence of an arbitration provision in a contract is not sufficient, in and of itself, to show mutual agreement to an arbitration provision. *Id*. (concluding that an affidavit stating that it was the defendant's practice and procedure to provide copies of a terms–of–service agreement that included an arbitration provision to each new customer prior to starting service was insufficient proof that the plaintiffs were given a contract which provided for the requirement of arbitration);

8

*DIRECTV, Inc.*, *supra* (holding that the trial court did not err in finding no mutual assent to the arbitration provision in a contract where the customer cancelled the contract within ten days of receipt of the contract). In *Alltel*, this court affirmed the circuit court's order denying a motion to compel arbitration and held that there must be specific evidence that an affected party received notice of an arbitration agreement or that a company implemented practices and procedures such that notice to the affected party can be reasonably inferred from the circumstances. Moreover, this court noted that the presence of multiple contracts containing inconsistent provisions relating to arbitration supported a finding that there was insufficient proof that the affected party was given notice of the arbitration provision.

In the present case, the Bank filed the motion to compel arbitration and, therefore, had the burden to prove that an arbitration agreement exists. *See, e.g.*, *Alltel Corp.*, *supra*; *see also Ozan Lumber Co. v. Price*, 219 Ark. 709, 244 S.W.2d 486 (1951) (where plaintiff alleged a contract existed between the parties, and defendant denied the existence of the contract, the burden fell on the plaintiff to prove a valid contract existed). The party who raises an arbitration agreement as a bar to court proceedings bears the burden of showing that a valid arbitration agreement exists. 92 Am. Jur. Proof of Facts 3d 1 (2006); *see also, THI of New Mexico at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1178 (D.N.M. 2012) *aff'd*, 532 F. App'x 813 (10th Cir. 2013) ("It is the party seeking judicial enforcement of an arbitration agreement who bears the burden of persuasion."); *In re Cusimano v. Berita Realty, LLC*, 959 N.Y.S.2d 711, 712 (N.Y. App. Div. 2013) ("The burden of proof is on the party seeking arbitration."); *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217,

9

1224–25 (Cal. 2012) ("The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability."); *GGNSC Stanford, LLC v. Rowe*, 388 S.W.3d 117, 121 (Ky. Ct. App. 2012) ("The party who raises an arbitration agreement as a bar to court proceedings bears the burden of showing a valid arbitration agreement exists.").

However, the Bank offered no affidavits or other evidence to support its contention that appellees received notice of or assented to the arbitration provision in the Account Agreement. Instead, the Bank relied on the mere presence of an arbitration clause in an undated and unsigned Account Agreement to support its motion to compel arbitration. While the Bank attached two versions of the Account Agreement—which the majority recognizes differed from the Account Agreement attached to appellees' complaint—and two signature cards indicating that the signors received a copy of an Account Agreement, the Bank offered no evidence to establish which of the three Account Agreements presented was the one referred to by the signature cards. Thus, the Bank, like Alltel, failed to provide any evidence to support its assertion that appellees received notice of the arbitration provision and failed to provide evidence that the Bank followed a practice and procedure such that notice to appellees could be reasonably inferred. Therefore, the circuit court's decision to deny the Bank's motion to compel arbitration should be affirmed.

In reaching this conclusion, I am aware that the circuit court did not make a ruling on whether an agreement to arbitrate existed. However, we review a circuit court's order denying a motion to compel arbitration de novo on the record. *Searcy Healthcare Ctr., LLC*

*v. Murphy*, 2013 Ark. 463. While de novo review does not mean that the findings of fact of the circuit judge are dismissed out of hand and that the appellate court becomes the surrogate trial judge, it does mean that a complete review of the evidence and the record may take place as part of the appellate review to determine whether the trial court clearly erred in either making a finding of fact or in failing to do so. *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). The de novo standard of review opens the entire record for our review. *BDO Seidman, LLP v. SSW Holding Co.*, 2012 Ark. 1, 386 S.W.3d 361. Moreover, under this standard of review, an appellate court is not constrained by the trial court's rationale, but may review the record for additional reasons to affirm. *Vowell v. Fairfield Bay Cmty. Club, Inc.*, 346 Ark. 270, 58 S.W.3d 324 (2001). It is well established that this court may affirm a trial court where it has reached the right result, although it may have announced a different reason. *See Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002). Thus, we can review the record in the present case to determine if the evidence supports affirmance.

Even assuming, without conceding, that the trial court erred in failing to make a finding regarding the existence of an arbitration agreement, a review of the record reveals that the Bank simply failed to produce evidence to support its allegation on this point. Where it is apparent from the record that a party failed to produce evidence sufficient to justify a determination of an issue, there is no need to speculate or to make factual findings. *Alltel*, *supra*; *see also*, *Ark. Dep't of Health & Human Servs. v. Storey*, 372 Ark. 23, 27, 269 S.W.3d 803, 805 (2007) (finding that this court reviews a question of law de novo) (citing *Helena–West Helena Sch. Dist. v. Fluker*, 371 Ark. 574, 268 S.W.3d 879 (2007)); 31 C.J.S. Evidence § 188

(2014) ("The burden of proof applicable in a particular case and where it lies is a question of law and is reviewed de novo."). Here is such a situation. No speculation is needed to understand that the Bank failed to carry its burden of proof.

This court has been woefully inadequate in enunciating the proper burden of proof in arbitration cases. By reversing this case, the majority permits the Bank to have a second bite at the apple to produce the evidence necessary to support the motion to compel arbitration which was filed more than two years ago. Furthermore, the majority muddles the issue of which party has the burden of proof to demonstrate that an agreement to arbitrate exists. Therefore, based upon my de novo review of the record, I would hold the Bank to its burden of proof and affirm the trial court's denial of the Bank's motion to compel arbitration.

BAKER and HOOFMAN, JJ., join.

*Rose Law Firm, a Professional Association*, by: *Richard T. Donovan*, *Amanda K. Wofford*, and *Betsy Turner-Fry*, for appellants.

*Golomb & Honik, P.C.*, by: *Ruben Honik*; and *Carney Bates & Pulliam, PLLC*, by: *Randall K. Pulliam* and *Breean Walas*, for appellees.

SLIP OPINION