SLIP OPINION

Cite as 2014 Ark. 545

# SUPREME COURT OF ARKANSAS

No. CV-14-138

GGNSC HOLDINGS, LLC, ET AL.
                                    APPELLANTS

V.

KATHYRN S. CHAPPEL, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF W.C. CHAPPEL, DECEASED, AND
ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF W.C.
CHAPPEL, ET AL.
                                    APPELLEES

**Opinion Delivered** DECEMBER 22, 2014

APPEAL FROM THE OUACHITA
COUNTY CIRCUIT COURT, SIXTH
DIVISION
[NO. CV-2011-121-6]

HONORABLE DAVID F. GUTHRIE,
JUDGE

REVERSED AND REMANDED.

**PAUL DANIELSON, Associate Justice**

This appeal presents a review of an order by the Ouachita County Circuit Court

denying a motion to compel arbitration. Appellants are GGNSC Holdings, LLC, its related

corporate entities, individual Golden LivingCenters located throughout Arkansas, and certain

employees of GGNSC (collectively referred to as "appellants"). Appellees are Dianne Roche,

as attorney-in-fact for Thomas Roche; Nellie Lamb, by and through Richard Williams, as

Guardian of the Estate and Person of Nellie R. Lamb; Betty Huebner, as Special

Administrator of the Estate of Wilma Richey, deceased; Greg Brown, as Special Administrator

of the Estate of Louise Brown, deceased; and Leon Robinson.[1]  GGNSC argues on appeal

---

[1]Thomas Roche, Nellie Lamb, Wilma Richey, Louise Brown, and Leon Robinson
each resided in a Golden LivingCenter facility. There are additional plaintiffs below who
were not subjects to the motions to compel and, thus, are not parties to the present appeal.

that the circuit court erred (1) in refusing to enforce the parties' arbitration agreement; and (2) in relying on appellees' additional arguments, that there was a lack of authority to bind appellees to the arbitration agreement and that the agreement was unconscionable, as grounds for denying the motion to compel arbitration. As this case is an interlocutory appeal from an order denying a motion to compel arbitration, our jurisdiction is proper pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2014). Because the circuit court failed to expressly rule on the threshold issue of whether there was a valid agreement to arbitrate, we must reverse and remand this matter to the circuit court.

The facts are these. Kathryn S. Chappel, as Special Administrator of the Estate of W.C. Chappel, deceased, filed an action alleging claims of negligence and wrongful death, on behalf of herself and other members of a class of similarly situated persons, against GGNSC, numerous related corporate entities, several of its nursing-facility centers located throughout Arkansas, and certain individuals who were employed by GGNSC or one of its related entities. The complaint alleged that GGNSC operated, managed, and/or maintained its nursing facilities in a manner that resulted in a failure to adequately staff the facilities to properly care for patients and did so in order to maximize profits. Appellees alleged violations of the Arkansas Deceptive Trade Practices Act, violations of the Long-Term Care Residents' Rights Act, and breach of the admission agreement between residents and appellants. Appellees requested class certification for a class of all residents of the facilities between

October 2006, and July 1, 2009; sought actual, compensatory, and punitive damages; and requested an award of attorneys' fees and costs.[2]

In their answers to the complaint, appellants alleged that any claims by appellees were barred from being litigated in a court of law because of arbitration agreements that were signed by the residents or their authorized agents. GGNSC subsequently filed motions to compel arbitration and stay proceedings as to appellees. The motions included identical allegations, specifically, that the plaintiffs or their agents signed a "Resident and Facility Arbitration Agreement" that was included in the admissions packet presented to each appellee. GGNSC asserted that all circuit court proceedings should be stayed pending resolution through the arbitration process because the arbitration agreements governed the disputes raised by appellees in their complaint. The relevant language pertaining to arbitration provided as follows:

> It is understood and agreed by [the] Facility and Resident that any and all claims . . . shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process. This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1–16.

Appellees filed a response to appellants' motions to compel arbitration asserting that they should be denied because appellants could not sustain their burden of proving that the parties, either personally or through a duly authorized agent, manifested assent to the terms

---

[2] Mrs. Chappel also alleged certain individual claims, but as previously stated she is not a party to the present appeal.

SLIP OPINION

of the arbitration agreement. Additionally, appellees argued that the agreement could not be enforced due to impossibility of performance—a defense to contract enforcement. Appellees argued that appellants chose the National Arbitration Forum ("NAF") to serve as the "exclusive" administrator of arbitration and specifically adopted the NAF Code of Procedure, which called for arbitration to be conducted "exclusively" by and through the NAF, but the NAF was no longer available to conduct consumer arbitrations. Finally, appellees also asserted the contract defense of unconscionability, arguing that the preprinted, fill-in-the-blank form was an adhesion contract, offered on a take-it-or-leave-it basis and, thus, was unenforceable.

The circuit court held a hearing on the motions to compel arbitration, and the parties further argued the issues raised in their respective motions and responses. At the conclusion of the hearing, the circuit court allowed the parties to conduct further discovery.[3] Thereafter, on January 30, 2014, the circuit court entered an order denying the motions to compel arbitration. Therein, the circuit court concluded that the reference to the NAF and its Code of Procedure adversely affected the validity of the agreement. In so concluding, the circuit court noted that the NAF no longer arbitrates consumer complaints and appellants' choice of the NAF tainted the validity of the arbitration agreement. Moreover, the circuit court noted that the contract made the NAF the mandatory and exclusive agent, adopted its Code of Procedure, and set the fee schedule for the parties and, as such, the choice of the NAF and

---

[3]At the conclusion of the hearing, the circuit court also orally ruled from the bench and denied a motion to dismiss filed by appellants and granted appellees' motion for class certification.

SLIP OPINION

its Code of Procedure were integral and essential terms of the contract that could not be severed. The circuit court concluded that it could not supply an alternative arbitrator, an alternative code of procedure, or an alternative fee schedule because the provisions were so significant that the court would be rewriting the contract, and it could not do so. This appeal followed.

At the outset, we note that an order denying a motion to compel arbitration is immediately appealable under Rule 2(a)(12). This court reviews an order denying a motion to compel de novo on the record, determining the issue as a matter of law. *E.g.*, *Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, 434 S.W.3d 357.

As its first point on appeal, GGNSC argues that the circuit court erred by refusing to enforce the parties' valid arbitration agreement because that agreement referenced the NAF and stated that the arbitration shall be conducted in accordance with the NAF's Code of Procedure. In this regard, GGNSC asserts several subpoints, including that (1) the plain language of the arbitration agreement establishes that the NAF Code of Procedure is not integral to the agreements; (2) appellees failed to offer any evidence that the NAF Code was integral to the parties' agreement; (3) the NAF clause may be severed; and (4) the circuit court improperly imputed the NAF's alleged inappropriate conduct to GGNSC.

Appellees counter that the circuit court properly denied the motions to compel arbitration because the unavailability of the NAF rendered the arbitration agreement invalid. According to appellees, the agreement was invalid because the designation of the NAF and the adoption of its Code of Procedure were essential and integral terms of the agreement; that

SLIP OPINION

those provisions could not be severed; and, the circuit court did not improperly impute the NAF's conduct to GGNSC.

Before turning to the merits of the arguments raised by GGNSC, this court must determine whether the circuit court ruled on the threshold issue of whether there was a valid agreement to arbitrate. Although an arbitration provision is subject to the Federal Arbitration Act, courts look to state contract law to decide whether the parties' agreement is valid. *E.g.*, *DIRECTV, Inc. v. Murray*, 2012 Ark. 366, 423 S.W.3d 555. In Arkansas, the same rules of construction apply to arbitration agreements as apply to agreements in general. *E.g.*, *Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005). Thus, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Id.*

Although the question of whether the circuit court ruled on the issue regarding the validity of the agreement itself is not an issue raised by the parties, this court has made clear that a circuit court may not skip this step of the analysis, nor will this court presume a ruling on this threshold issue simply because a circuit court rules on an asserted defense. *See Bank of the Ozarks*, 2014 Ark. 223, 434 S.W.3d 357. In *Bank of the Ozarks*, the circuit court denied the appellant's motion to compel arbitration after finding that the agreement was unconscionable. This court reversed and remanded to the circuit court to determine, in the first instance, whether there was a valid agreement to arbitrate between the parties. *Id.* We further instructed that if the circuit court was to find that there is a valid agreement to arbitrate, then it must determine whether the dispute falls within the scope of the agreement.

*Id.* Only then, could the circuit court consider whether the appellees had a defense that may be applied to invalidate the agreement. *Id.*

It is true that this court distinguished *Bank of the Ozarks* in the subsequent appeal of *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119. There, a majority of the court explained the ruling in *Bank of the Ozarks* but concluded that

> [w]hile at first blush it might appear that our holding in *Bank of the Ozarks* would require us to reverse and remand this case for the circuit court to rule on the question of whether a valid arbitration agreement exists, we find that the order in [the] present case is distinguishable from *Bank of the Ozarks* and is not controlled by that precedent.

*Id.* at 6, 437 S.W.3d at 122. There, both parties argued the issues of assent, mutuality, and waiver to the circuit court, but the circuit court entered a blanket denial of the motion to compel and further denied a subsequently filed motion for specific findings. This court held that there was no need to remand the case for a threshold finding on whether a valid agreement to arbitrate existed because the circuit court's order constituted a ruling on all of the issues raised by the parties, including the threshold issue of mutual assent. *Id.*

Considering the instant case in light of our most recent precedent, it is clearly more akin to the situation presented in *Bank of the Ozarks* than that presented in *Asset Acceptance*. Here, we simply do not have a blanket denial of the motion to compel. The order that is the subject of this appeal specifically addresses an issue involving impossibility of performance, a defense to a contract. After an in-depth discussion on that issue, the circuit court included a catch-all sentence that read, "The other arguments of Plaintiffs' counsel against the motion to compel arbitration are persuasive and contribute to this decision." Those other arguments

raised by appellees were that there was no mutual assent because of a lack of authority on the part of those who signed the arbitration agreement and that the agreement was unconscionable.[4]

Clearly, appellees challenged the validity of the arbitration agreement itself and, thus, it was incumbent on the circuit court to address this threshold issue. We cannot construe the court's catch-all sentence to be a ruling on the issue of whether there was a valid agreement to arbitrate. The circuit court stated that appellees' other arguments contributed to its decision to deny the motions to compel. But, it would be illogical for this court to conclude that appellees' argument that there was no valid agreement to arbitrate contributed to the denial of the motions because there would have been no need for the court to consider the impossibility defenses. In other words, if we were to assume anything about the circuit court's ruling, we would have to assume that the court impliedly found that there was a valid agreement to arbitrate and then considered the contract defense. But, we are not allowed to presume any such ruling pursuant to our precedent in *Bank of the Ozarks*. Accordingly, we reverse and remand this matter to the circuit court.

Reversed and remanded.

BAKER, GOODSON, and HOOFMAN, JJ., concur.

HART, J., concurs without written opinion.

---

[4]Appellees do not assert that there was a lack of authority with regard to Mr. Robinson.

**COURTNEY HUDSON GOODSON, Justice, concurs.** I agree that, pursuant to our decision in *Bank of the Ozarks*, 2014 Ark. 223, 434 S.W.3d 357, this case must be remanded to the circuit court for lack of a ruling on a threshold issue, but I write separately to underscore my concerns regarding our dramatic shift in legal precedence as a result of that case, and the regrettable position in which we have now placed the bench and the bar when handling arbitration claims.

In *Bank of the Ozarks*, this court held that a circuit court was required to make express findings on the existence of a valid arbitration agreement as a threshold issue, before reaching any equitable defenses presented by the parties. This court has refused to recognize this pronouncement as a marked shift in the law, when it does, in fact, add a new requirement, and thus a burden on the bench and bar. *Bank of the Ozarks* represents a clear departure from our traditional appellate rules governing contract cases, where we have never required a circuit court to rule on the existence of a contract before addressing any equitable defenses raised by the parties. *See, e.g.*, *K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 280 S.W.3d 1 (2008) (addressing merits of appeal where the circuit court did not address the threshold issue of the existence of a valid contract, but instead ruled on the defense of waiver of damages).

Additionally, in applying the *Bank of the Ozarks* rule, the cases following that decision have further muddled the legal landscape of what is required of a circuit court in addressing a motion to compel arbitration. In *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119, we held that a blanket denial can serve as an implicit ruling on all threshold

9

issues, and in *Alltel Corp. v. Rosenow*, 2014 Ark. 375, we held that the court was not required to rule on all threshold issues if it ruled on one. Thus, the principles that arise from those three cases are that if the circuit court gives no justification at all for its ruling, that is sufficient; or, if it rules on only one threshold issue but not all, that will suffice. But if the circuit court reaches the right result on a defense but does not expressly address contract formation, we will reverse and remand the circuit court's decision. This rubric defies logic and will only continue to grow more nonsensical as this court struggles to apply the new *Bank of the Ozarks* rule in future cases.

At a time when this court has a goal of streamlining our rules for the benefit of practitioners and our circuit courts, *Bank of the Ozarks* moves in the wrong direction by adding another layer of complexity to an already complicated area of the law. While I am constrained to follow precedent, I feel compelled to point out that the course we have embarked on is unwise.

BAKER and HOOFMAN, JJ., join.

*Hardin, Jesson & Terry, PLC*, by: *Kirkman T. Dougherty*, *Jeffrey W. Hatfield*, and *Kynda Almefty*, for appellant.

*Campbell Law Firm, P.A.*, by: *H. Gregory Campbell*; *Ludwig Law Firm, PLC*, by: *Gene A. Ludwig*; and *Reddick Moss, PLLC*, by: *Brian D. Reddick*, for appellees.