Paul E. Danielson, Justice, dissenting. I respectfully but strongly dissent. The majority’s decision in this case is wrong; more important, it sets bad precedent that, in my view, will ultimately eviscerate the right to trial by jury guaranteed by our constitution. See Ark. Const, art. 2, § 7. First, for the same reasons stated in my dissent in Courtyard Gardens Health. & Rehabilitation, LLC v. Arnold, 2016 Ark. 62, 485 S.W.3d 669, I disagree with the majority’s conclusion that the arbitration agreements at issue here were not impossible to perform. As I opined in that case, the designation of the National Arbitration Forum (“NAF”) was an integral term of the parties’ agreements; therefore, the unavailability of the NAF rendered the agreements impossible to perform and, consequently, unenforceable. Second, I cannot agree with the majority’s conclusion on the issue of unconsciona-bility, as its analysis is flawed. A careful reading of the majority opinion reveals only one basis for its holding that the circuit court .erred in finding the arbitration agreements unconscionable, and that is our public policy favoring arbitration. This truncated analysis violates our. mandate to treat arbitration agreements the same as any other contract. See, e.g., Alltel Corp. v. Rosenow, 2014 Ark. 375, 2014 WL 4656609 (citing AT & T Mobility LLC v. Concepcion, 563 U.S. 333,131 S.Ct. 1740,179 L.Ed.2d 742 (2011)). Our framework for reviewing arbitration disputes is well settled. The threshold inquiry is whether a valid agreement to arbitrate exists. See, e.g., Bank of the Ozarks lnc. v. Walker, 2014 Ark. 223, 434 S.W.3d 357. If a valid agreement to arbitrate exists, then we must determine whether the dispute falls within the scope of the agreement. See id. Even if an arbitration agreement exists and the dispute falls within the scope of the agreement, a court may still declare an arbitration agreement unenforceable “upon such grounds as exist at law or in equity for the revocation of any contract.” Id. at 5, 434 S.W.3d at 360 (citing EDO Seidman, LLP v. SSW Holding Co., Inc., 2012 Ark. 1, at 13, 386 S.W.3d 361, 370 (quoting Federal Arbitration Act, 9 U.S.C. § 2)). “Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements.” Id. at 6, 434 S.W.3d at 360 (quoting Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). Importantly, although an arbitration provision may be subject to the Federal Arbitration Act, courts look to state contract law to decide whether the parties’ agreement to arbitrate is valid. See id.; Reg’l Care of Jacksonville, LLC v. Henry, 2014 Ark. 361, 444 S.W.3d 356. In Arkansas, the same rules of construction apply to arbitration agreements as apply to agreements in general. See Walker, 2014 Ark. 223, 434 S.W.3d 357. As this court has observed, “[t]he [United States] Supreme Court has acknowledged that whether the arbitration clause itself is unenforceable based on a generally applicable contract defense, such as unconscionability, is a decision for the court (not the arbitrator) to make, and in doing so, \2nit must apply state contract law.” LegalZoom.com, Inc. v. McIllwain, 2013 Ark. 370, at 7, 429 S.W.3d 261, 264-65 (emphasis added) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). Thus, to be clear, we must apply state contract law in assessing the validity and enforceability of an arbitration agreement. The majority’s opinion today utterly fails to do that; instead, it relies solely on our public policy favoring arbitration. We have historically cited that policy as part of our analysis, but it has not been — and should not be — the extent of our analysis. As we have often stated, in determining whether a valid and enforceable arbitration agreement exists, “doubts about arbi-trability must be resolved in favor of arbitration.” HPD, LLC v. TETRA Techs., Inc., 2012 Ark. 408, at 6, 424 S.W.3d 304, 308. The United States Supreme Court has held similarly with respect to the national policy favoring arbitration expressed in the Federal Arbitration Act: The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the ' construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The majority’s opinion in this case goes far beyond resolving any doubts in favor of arbitration. It rubber-stamps the arbitration agreements before it based simply on our policy favoring arbitration. This begs the question: Going forward, could there ever be an arbitration agreement the majority determines to be invalid or unenforceable? If today’s decision is any indication, the answer to that question is no. This court has previously observed that the national policy favoring arbitration is not 121 a requirement that arbitration agreements be elevated above other types of contracts. See, e.g., Alltel, 2014 Ark. 375, 2014 WL 4656609. By enacting section 2 of the Federal Arbitration Act, “Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed ‘upon the same footing as other contracts.’ ” Doctor’s Assocs., Inc., 517 U.S. at 687, 116 S.Ct. 1652 (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). The majority has singled out arbitration agreements for special status instead, such that they need not be scrutinized as contracts at all. This approach is misguided. For these reasons, I dissent. Wynne, J., joins in this dissent.