Cite as 2020 Ark. 70

# SUPREME COURT OF ARKANSAS

No. CV-19-151

| | |
|---|---|
| | **Opinion Delivered:** February 20, 2020 |
| BHC PINNACLE POINTE HOSPITAL, LLC | |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-18-7000] |
| V. | |
| DEBRA NELSON AND HENRY ANDERSON, JR., INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| APPELLEES | REVERSED AND REMANDED. |

**KAREN R. BAKER, Associate Justice**

In this interlocutory appeal, appellant BHC Pinnacle Pointe Hospital, LLC ("Pinnacle Pointe"), appeals the Pulaski County Circuit Court's order denying its motion to compel arbitration of a class-action complaint filed by appellees Debra Nelson and Henry Anderson, Jr., individually and on behalf of all others similarly situated (collectively "employees"). On appeal, Pinnacle Pointe argues that the circuit court erred in denying its motion to compel arbitration. We reverse and remand.

On October 8, 2018, the employees filed a class-action complaint against Pinnacle Pointe for its violations of the Arkansas Minimum Wage Act ("AMWA"), Arkansas Code Annotated sections 11-4-201 et seq. (Repl. 2012 & Supp. 2019). Pinnacle Pointe owns and operates a behavioral inpatient facility for children and adolescents struggling with emotional

and behavioral issues. The employees worked for Pinnacle Pointe as hourly registered nurses and mental-health technicians. They alleged that Pinnacle Pointe has a common policy and practice of requiring its employees to clock out for a thirty-minute break each shift, regardless of whether the employees were able to take the break. The employees alleged that due to patient care and low staffing levels, they routinely worked through their breaks and were unpaid for the work they performed during that time. The employees further alleged that Pinnacle Pointe's break policy violates the minimum-wage and overtime provisions of the AMWA. As relevant to the present appeal, the employees requested that the circuit court certify their case as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure; enter a declaratory judgment that the practices complained of are unlawful; enter judgment against Pinnacle Pointe for an amount equal to the unpaid back wages of the employees at the applicable minimum-wage and overtime rates; and enter judgment against Pinnacle Pointe for liquidated damages equal to the amount of unpaid back wages under the AMWA.

On November 13, 2018, Pinnacle Pointe filed its motion to dismiss the complaint and compel arbitration or, in the alternative, to stay litigation and discovery pending arbitration. Pinnacle Pointe explained that it routinely executes voluntary arbitration agreements, called Alternative Resolution for Conflicts ("ARC") Agreements with its employees. The ARC Agreements are governed by the Federal Arbitration Act ("FAA"). Pinnacle Pointe contended that the employees voluntarily entered into the valid and binding arbitration agreements and that their claims fall squarely within the scope of the ARC Agreement.

With regard to the ARC Program, Pinnacle Pointe attached as an exhibit an affidavit of Bill Lightfoot, the assistant vice president of Clinical Training and Education for the Behavioral Health Division of UHS of Delaware, Inc. Mr. Lightfoot stated that the ARC Program provides a comprehensive mechanism for resolving disputes in "Tiers." The ARC Summary set forth the ARC Tiers as follows:

> Tier 1
> In the first of three Tiers, you will continue to bring any workplace concerns directly to us by following the procedures in the Dispute Resolution Policy–Problem Solving Procedure as outlined in your Employee Handbook. This is considered Tier 1, and most concerns will be resolved at this level.
>
> Tier 2
> If Tier 1 doesn't result in a resolution, you may choose to proceed to Tier 2: Mediation. Mediation is a voluntary process where procedures and conversations are facilitated by a neutral third party whose purpose is to help you and your employer reach an agreeable resolution. There are guidelines to help begin the process online at the American Arbitration Association website: www.adr.org.
>
> Tier 3
> If a solution to your concerns is not resolved at Tier 2, then you can proceed with Tier 3, Arbitration. Arbitration is a hearing and an alternative to court. Arbitration is overseen by an arbitrator who is a professional, independent, and impartial third party who listens to both sides, reviews evidence, and renders a final, binding decision.
>
> In short, Tier 1 provides you with an opportunity to directly resolve concerns with your employer. If necessary, Tier 2 provides an opportunity for both parties to tell their stories with a listener who provides an objective view of the grievance and offers options to resolve the dispute. Finally, Tier 3 provides both parties with a neutral decision maker who is empowered to end the dispute.

Mr. Lightfoot explained that the employees receive education through HealthStream, an online-learning management system. The employees review and electronically acknowledge the ARC Program and the ARC Agreement by participating in

3

an online learning activity called the ARC Course. The ARC Course requires the employees to complete four distinct steps: (1) open and review the ARC Summary, (2) open and review the ARC Agreement, (3) open and review the ARC Acknowledgment Form, and (4) complete the ARC Attestation. ARC Attestation is the final mandatory step in the ARC Course. This final step cannot be completed until the employee completes the three prior steps. It requires the employee to select one of two options. The first option states, "I acknowledge this course contains the ARC Program materials, and I have had an opportunity to review them." If an employee selects this option, it will register as a "100%" on his or her transcript, which means that the employee has completed the ARC Program materials. The second option states, "I acknowledge this course contains the ARC Program materials, but have difficulty understanding or accessing the information." An employee who selects this option receives a notification stating, "Please go back and review steps 1, 2, and 3. If you are still having difficulty accessing or understanding the information, please contact your Human Resources Department immediately as you only have 30 days to decide whether to opt out of the ARC Program." Mr. Lightfoot explained that participation in the ARC Program is not a mandatory requirement for employment at Pinnacle Pointe. The employees have the option of completing an ARC Agreement Opt Out Form, which must be returned to the human resources department within thirty days of the employee's receipt of the ARC Agreement.

Anderson's November 30, 2013 certificate of completion reflected that he completed the ARC Course and received a score of "100%." The ARC Agreement reviewed by Anderson provided in pertinent part:

4

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Company or one of its affiliates, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse Employee from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

. . . .

Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, compensation, breaks and rest periods[.]

Pinnacle Pointe also attached the affidavit of its human resources director, James Howe. Mr. Howe explained that the ARC Program can be completed online through HealthStream or reviewed in paper format. Any ARC documents that are submitted in paper format are maintained as part of the employee's personnel file. Mr. Howe stated that Nelson signed her ARC Acknowledgment Form and ARC Agreement on August 29, 2017.[1] Mr. Howe stated that neither Nelson nor Anderson submitted the ARC Opt Out Form. Further, Pinnacle Pointe asserted that Nelson and Anderson intended to be bound by the arbitration agreements pursuant to the FAA because they did not submit Opt Out Forms; they voluntarily entered into valid arbitration agreements; and the employees' claims are within the scope of the arbitration agreement.

---

[1]Mr. Howe's affidavit stated that Nelson's ARC forms were attached as exhibits. However, in its December 10, 2018 reply to the employees' response, Pinnacle Pointe explained that it had inadvertently failed to attach Nelson's ARC Agreement. Pinnacle Pointe remedied this inadvertency by attaching Nelson's executed ARC forms.

On December 3, 2018, the employees filed their response to Pinnacle Pointe's motion to dismiss complaint and compel arbitration. First, the employees argued that the arbitration agreements are unenforceable because they are predispute jury trial waivers that violate the right to a jury trial under the Arkansas Constitution. The employees specifically relied on *Tilley v. Malvern National Bank*, 2017 Ark. 343, 532 S.W.3d 570, to support their position. Second, the employees argued that the arbitration agreements are unenforceable because the ARC process violates the AMWA's express prohibition on implementing additional procedural requirements before an employee can assert his or her rights under the Act.

On December 10, 2018, Pinnacle Pointe filed its reply to the employees' response. Pinnacle Pointe argued that the employees' interpretation of *Tilley* was overbroad. Pinnacle Pointe contended that the ARC dispute-resolution steps do not violate the AMWA and therefore do not void the arbitration agreements. Pinnacle Pointe acknowledged that it inadvertently failed to attach copies of Nelson's ARC Acknowledgment Form and ARC Agreement and therefore attached a copy of both as exhibits. Nelson's ARC Agreement is similar to Anderson's ARC Agreement (1) it is governed by the FAA; (2) it applies to any dispute arising out of or related to employee's employment with Company or termination of employment and survives after the employment relationship terminates; (3) it is not to be construed to prevent or excuse the employee from utilizing the Company's existing internal procedures for resolution of complaints; and (4) it is not intended to be a substitute for the utilization of such procedures. Likewise, Nelson's ARC Agreement applies to disputes regarding the employment relationship, compensation, and breaks and rest periods.

Additionally, Pinnacle Pointe attached a second affidavit of James Howe in which he stated that as part of his duties, he assists with maintaining the employee handbook and is involved in addressing issues that employees bring forward pursuant to the voluntary Dispute Resolution Procedure; he also stated that employees are not required to submit a dispute directly to the facility as a prerequisite to arbitration under the ARC Agreement. A copy of the dispute resolution procedure found in the employee handbook was also attached.

On December 17, 2018, the employees filed their sur-reply in opposition to Pinnacle Pointe's motion to dismiss complaint and compel arbitration. The employees asserted that the employee handbook provision referenced in Tier 1 of the ARC Program itself has five different steps for an employee to follow in the dispute resolution process. The employees contended that despite Pinnacle Pointe's position that the different Tiers in the ARC Program are not mandatory, the language in the ARC and the employee handbook suggest otherwise. The employees argued that the handbook presents administrative hurdles that violate the AMWA.

On December 26, 2018, Pinnacle Pointe filed its response to the employees' sur-reply. Pinnacle Pointe responded that the employee handbook's Dispute Resolution Procedure as well as the ARC Agreement itself are voluntary.

On January 11, 2019, the circuit court notified the parties that a motion hearing had been set for January 25, 2019. However, on January 18, 2019, the circuit court entered its order denying Pinnacle Pointe's motion to dismiss complaint and compel arbitration or, in the alternative, to stay litigation and discovery pending arbitration. On January 22, 2019, Pinnacle Pointe filed its notice of appeal.

## I. *Jurisdiction*

As a threshold issue, we first turn to the employees' argument that this court lacks jurisdiction to consider the appeal because the appeal is not authorized by an Arkansas statute. Rule 2(a)(12) of the Arkansas Rules of Appellate Procedure–Civil provides that an appeal may be taken from a circuit court to the Arkansas Supreme Court from "[a]n order appealable pursuant to any statute in effect on July 1, 1979, including Ark. Code Ann. § 16-108-228 (formerly § 16-108-219) (an order denying a motion to compel arbitration or granting a motion to stay arbitration, as well as certain other orders regarding arbitration)[.]" The employees contend that section 16-108-228 does not apply to the present dispute because the Arkansas Uniform Arbitration Act ("AUAA") does not apply to employer-employee disputes. Ark. Code Ann. § 16-108-233(b)(2). The employees recognize Pinnacle Pointe's argument that the appeal is authorized by the FAA and not the AUAA; however, the employees argue that the FAA does not provide this court with jurisdiction for two reasons. First, federal statutes cannot confer jurisdiction in this court because the federal government does not control jurisdiction or procedure in this court. Second, the FAA did not allow interlocutory appeals of an order denying a motion to compel arbitration until 1988. *See* Judicial Improvements and Access to Justice Act of 1988, Pub. L. No. 100-702, sec. 1019, § 15, 102 Stat. 4642.

In this case, the arbitration agreements at issue are clearly governed by the FAA. Thus, the employees' argument regarding the AUAA's exclusion of the employer-employee disputes is of no moment. When we construe a court rule, we use the same means and canons of construction that we use to interpret statutes. *Kesai v. Almand*, 2011 Ark. 207, at

8

3–4, 382 S.W.3d 669 (citing *Pope v. Overton*, 2011 Ark. 11, 376 S.W.3d 400). The first rule in considering the meaning and effect of a statute or rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language; when the language is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* As Pinnacle Pointe correctly points out, Rule 2(a)(12) does not state "a provision of a statute in effect" or "a statute as in effect on July 1, 1979." Rather, Rule 2(a)(12) permits an interlocutory appeal of an order "pursuant to *any statute* in effect on July 1, 1979." (Emphasis added.) Considering the plain language contained in Rule 2(a)(12), because the FAA was in effect on July 1, 1979, our jurisdiction is in accordance with Rule 2(a)(12). *See also Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, at 7, 437 S.W.3d 119, 123 (noting that the arbitration agreement was governed by the FAA and thus our jurisdiction was pursuant to Rule 2(a)(12)); *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, at 5, 485 S.W.3d 669 (also stating that the FAA governed the arbitration agreement at issue and that the denial of the motion to compel arbitration was an immediately appealable order under Rule 2(a)(12)); *GGNSC Holdings, LLC v. Lamb ex rel. Williams*, 2016 Ark. 101, 487 S.W.3d 348 (noting that the arbitration agreement at issue was subject to the FAA and thus appealable under Rule 2(a)(12)).

## II. *Denial of the Motion to Compel Arbitration*

On appeal, Pinnacle Pointe argues that the circuit court erred as a matter of law in denying its motion to compel arbitration. We review a circuit court's order denying a motion to compel arbitration de novo on the record. *Searcy Healthcare Ctr., LLC v. Murphy*,

9

2013 Ark. 463, at 3 (citing *HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, 424 S.W.3d 304).

As set forth above, the arbitration agreements at issue are governed by the FAA. In *Regional Care of Jacksonville, LLC v. Henry*, we explained that Congress enacted the FAA, 9 U.S.C. §§ 1–16, to overcome judicial resistance to arbitration. 2014 Ark. 361, at 6, 444 S.W.3d 356, 360 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)). Section 2 of the FAA provides as follows:

> A written provision . . . or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Act, which rests on Congress' authority under the Commerce Clause, supplies not simply a procedural framework applicable in federal courts, it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration. *Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984)). The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989). To this end, the Supreme Court recognizes that parties are generally free to structure their arbitration agreements as they see fit. *Id*. With the enactment of the FAA, Congress declared a national policy favoring arbitration when the parties contract for that mode of dispute resolution. *Preston*, 552 U.S. at 349 (citing *Southland Corp.* 465 U.S. at 16). In *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47 (2015), the Court

10

disapproved of the California Court of Appeal's interpretation of an arbitration clause because it resulted in the failure to place arbitration agreements "on equal footing with all other contracts." *Id*. (citing *Buckeye Check Cashing*, 546 U.S. at 443). The *DIRECTV* Court reasoned that the California court's decision failed to give "due regard . . . to the federal policy favoring arbitration." *Id*. at 471 (citing *Volt Info. Scis., Inc.*, 489 U.S. at 476). Likewise, as a matter of public policy, arbitration is strongly favored in Arkansas. *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001). Arbitration is looked upon with approval as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Id*. Any doubts and ambiguities of coverage will be resolved in favor of arbitration. *Id*. In light of the public policy favoring arbitration, such agreements will not be construed strictly but will be read to include subjects within the spirit of the parties' agreement. *Id*.

Additionally, despite an arbitration provision being subject to the FAA, courts look to state contract law to determine whether the parties' agreement to arbitrate is valid. *GGNSC Holdings, LLC v. Chappel*, 2014 Ark. 545, 453 S.W.3d 645. The same rules of construction and interpretation apply to arbitration clauses as to agreements generally. *Hart*, 344 Ark. 656, 42 S.W.3d 552. The construction and legal effect of a written contract to arbitrate are to be determined by the court as a matter of law. *Id*. Accordingly, we will give effect to the parties' intent as evidenced by the arbitration agreement itself. *Id*.

In *HPD, LLC v. Tetra Technologies, Inc.*, we explained:

In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered. First, is there a valid agreement to arbitrate between the parties? Second, if such an agreement exists, does the dispute fall within its scope? In answering these questions, doubts about arbitrability must be resolved in favor of arbitration. Further, the court (rather than the arbitrator) decides these questions of arbitrability, unless the parties clearly and

11

unmistakably delegate that issue to the arbitrator. Based on the principle that arbitration is a matter of contract, the question of "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter.

2012 Ark. 408, at 6, 424 S.W.3d 304, 308 (internal citations omitted). Even if an arbitration agreement exists and the dispute falls within the scope of the agreement, a court may still declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *BDO Seidman, LLP v. SSW Holding Co., Inc.*, 2012 Ark. 1, at 13, 386 S.W.3d 361, 370 (quoting Federal Arbitration Act, 9 U.S.C. § 2). "This permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability[.]'" *Id.*, 386 S.W.3d at 370 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

A. Predispute Jury-Trial Waiver

In the present case, Nelson and Anderson do not challenge either the validity or the scope of their ARC Agreements. Nor do they contend that their agreements are unenforceable based on general contract defenses.[2] Instead, they argue that their arbitration agreements are predispute jury-trial waivers and are unenforceable pursuant to *Tilley*, 2017 Ark. 343, 532 S.W.3d 570. In *Tilley*, we held that predispute contractual waivers of the right to a jury trial are unenforceable under the Arkansas Constitution. We explained as follows:

The Arkansas Constitution states that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Ark. Const. art. 2, § 7. *Black's Law Dictionary*

---

[2]Below, the employees argued that the arbitration agreements were unconscionable. However, they have abandoned this argument on appeal. Arguments not made on appeal are considered abandoned. *DePriest v. AstraZeneca Pharms.*, 2009 Ark. 547, 351 S.W.3d 168.

defines "inviolate" as "free from violation; not broken, infringed, or impaired." *Black's Law Dictionary* 904 (9th ed. 2009).

When tasked with interpreting the phrase "in the manner prescribed by law," this court has stated:

> Obviously, those who drafted the constitutional amendment had the purpose and intention to invest in the Legislature the authority to determine what actions on the part of a litigant constituted a waiver of the right of trial by jury; we say 'obviously' because there could have been no other purpose in the provision, 'but a jury trial may be waived by the parties in all cases in the manner prescribed by law'. This provision, of course, includes prospective laws. The General Assembly is the lawmaking power, and it proceeded, in passing Act 460 of 1949 [of which 27–1743.2 is a part], to prescribe and enumerate various acts by which a defendant waives a trial by jury.

*Mode v. Barnett*, 235 Ark. 641, 645, 361 S.W.2d 525, 527 (1962). Further, in *Venable v. Becker*, we found that a valid waiver of the right to a trial by jury occurred in the manner prescribed by Rule 38 of the Arkansas Rules of Civil Procedure and the former statute that Rule 38 superseded, Ark. Stat. Ann. § 27-1743. Thus, this court has consistently interpreted the phrase "in the manner prescribed by law," to be governed by Arkansas statutes and the Arkansas Rules of Civil Procedure.

*Id*. at 13, 532 S.W.3d at 577–78. In rejecting Malvern National Bank's comparison of a jury-waiver clause to an arbitration clause, we explained that "arbitration agreements are governed by the Arkansas Arbitration Act as codified at Ark. Code Ann. §§ 16-108-201 et seq." *Id*. at 13, 532 S.W.3d at 578. We went on to explain that because arbitration agreements subject to the Arkansas Arbitration Act are governed by the Arkansas Code, in executing a contract containing an arbitration clause, the party waives its right to a jury trial "in a manner prescribed by law" pursuant to the Arkansas Constitution. However, we explained that "the same cannot be said for predispute jury-waiver clauses because no Arkansas statute or Arkansas rule of civil procedure expressly provides for predispute waivers of the right to a jury trial." *Id*. at 13–14, 532 S.W.3d at 578.

Relying on *Tilley*, the employees contend that because the FAA is not an Arkansas statute or Arkansas rule, the FAA is not "a manner prescribed by law" in which one may waive the right to a jury trial. Stated differently, the employees argue that because the ARC Agreements are governed by the FAA and not an Arkansas law, they are unenforceable pursuant to the Arkansas Constitution. In response, Pinnacle Pointe urges this court to reject the employees' misapplication of *Tilley* and argues that the FAA and the Supremacy Clause of the United States Constitution mandate enforcement of the ARC Agreements.

The Arkansas Constitution states that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases *in the manner prescribed by law*." Ark. Const. art. 2, § 7 (emphasis added). Article 2, section 7 is not limited to a "manner prescribed by *Arkansas* law." (Emphasis added.) Further, as Pinnacle Pointe correctly notes, the present case is factually distinguishable from *Tilley* because unlike the present case, the contract at issue in *Tilley* did not contain an arbitration clause. Our statement in *Tilley*—that the predispute jury waiver was unenforceable because it is not governed by an Arkansas law— was a rejection of Malvern National Bank's specific argument comparing a predispute jury-waiver clause to an arbitration agreement pursuant to "the Arkansas Arbitration Act as codified in Ark. Code Ann. §§ 16-108-201 et seq." Further, our reference to Arkansas law as "a manner prescribed by law" in which one may waive the right to a jury trial was focused on Arkansas law because *Tilley* involved a consumer-loan contract governed by state law. In other words, our statement regarding Arkansas law was not an exhaustive list of the manners "prescribed by law" in which one may waive the right to a jury trial. Accordingly,

14

we hold that arbitration agreements governed by the FAA constitute "a manner prescribed by law" in which one may waive the right to a jury trial.[3]

## B. AMWA

Finally, the employees argue that the ARC Agreements are unenforceable because they impose numerous procedural burdens that are prohibited by the AMWA. To support their position, the employees contend that according to the AMWA, employees asserting their rights under the Act "shall not be required to exhaust administrative remedies before bringing an action." Ark. Code Ann. § 11-4-218(e)(3)(A). Further, the AMWA provides that "there shall be no procedural, pleading, or burden of proof requirements beyond those that apply generally to civil suits in order to maintain the action." Ark. Code Ann. § 11-4-218(e)(3)(B). Thus, the employees contend that the ARC process violates the AMWA's express prohibition against implementing additional procedural requirements before an employee can assert his or her rights under the Act.

In reviewing section 11-4-218, the primary rule of statutory interpretation is to give effect to the intent of the legislature. *Keep Our Dollars in Independence Cty. v. Mitchell*, 2017 Ark. 154, 518 S.W.3d 64. We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* In conducting this review, we will reconcile statutory provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.* Furthermore, we will not read into a statute language that was not included by the legislature. *Id.*

---

[3]Because we hold that the FAA is "a manner prescribed by law" in which one may waive the right to a jury trial, we decline to address the parties' additional arguments regarding the Supremacy Clause.

15

On review, the AMWA itself does not define exhaustion of administrative remedies. *Black's Law Dictionary* defines exhaustion of administrative remedies as "[t]he doctrine that, if an administrative remedy is provided by statute, a claimant must seek relief first from the administrative body before judicial relief is available." *Black's Law Dictionary* 694 (10th ed. 2014). An administrative remedy is defined as "a nonjudicial remedy provided by an administrative agency." *Id.* at 1485. Administrative agency is defined as "an official body, esp. within the government, with the authority to implement and administer particular legislation." *Id.* at 75.

In this case, the purported administrative and procedural burdens do not amount to an exhaustion of administrative remedies as contemplated by the AMWA. The AMWA's rule on administrative remedies is inapplicable to the ARC Agreements because administrative agencies—not private parties—establish administrative remedies.

As set forth above, Nelson and Anderson do not challenge either the validity or the scope of their ARC Agreements. Nor do they contend that the ARC Agreements are unenforceable on the basis of general contract defenses. Therefore, we hold that Pinnacle Pointe has met its burden of demonstrating the validity of Nelson's and Anderson's ARC Agreements.

We now turn to whether the claims asserted by the employees fall within the scope of their ARC Agreements. ARC Agreements apply, without limitation, to disputes regarding the employment relationship, compensation, breaks and rest periods. Thus, we conclude that the claims brought by Nelson and Anderson fall within the scope of their respective ARC Agreements. Accordingly, we hold that the circuit court erred in denying

16

Pinnacle Pointe's motion to compel arbitration. We reverse and remand for the entry of an order compelling arbitration.

Reversed and remanded.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. Arkansas law prohibits enforcement of the "ARC agreements," and the Federal Arbitration Act (FAA) does not preempt or otherwise impact this conclusion in any way. Furthermore, the ARC agreements lack the necessary elements required of an enforceable contract. The circuit court's order denying arbitration should be affirmed for either of these reasons.

I. *Arkansas Law Prohibits Enforcement of the ARC Agreements, and this Conclusion Is Not Impacted by the Federal Arbitration Act*

A. Arkansas Law Prohibits Enforcement of the ARC Agreements

Arkansas law, specifically within the context of a worker seeking to recover owed but unpaid wages from his or her employer, is crafted to ensure that the worker can effectively and efficiently go to court and obtain what he or she is owed. Arkansas Code Annotated § 11-4-218(e)(1) provides as follows: "An employee may bring an action for equitable and monetary relief against an employer, including the State of Arkansas or a political subdivision of the state,[1] if the employer pays the employee less than the minimum

---

[1]This law also applied to the State until a majority of this court opined in *Board of Trustees of University of Arkansas v. Andrews*, 2018 Ark. 12, 535 S.W.3d 616, that "sovereign immunity" shielded the State from any monetary liability. There, the majority dismissed the plaintiff-appellee's claim against his State employer for unpaid wages brought pursuant to the Arkansas Minimum Wage Act. As I have previously observed, "Effectively, a majority of this court held that the State of Arkansas does not have to pay its employees minimum wage, or at least that no court can make the State pay its employees their wages when it has declined to do so." *Milligan v. Singer*, 2019 Ark. 177, at 8, 574 S.W.3d 653, 658 (Hart, J.,

wages, including overtime wages, to which the employee is entitled[.]" Arkansas Code Annotated section 11-4-218(e)(3)(A)–(B) adds: "The employee shall not be required to exhaust administrative remedies before bringing an action. [. . .] There shall be no procedural, pleading, or burden of proof requirements *beyond those that apply generally to civil suits* in order to maintain the action." (Emphasis added.) Furthermore, while the statutory codification of the Arkansas Uniform Arbitration Act does provide that arbitration agreements are valid and enforceable as a general matter, *see* Ark. Code Ann. § 16-108-206(a), those statutes expressly "[do] not apply to . . . [e]mployer–employee disputes[.]" *See* Ark. Code Ann. § 16-108-233(b)(2).

Finally, article 2, section 7 of the Arkansas Constitution provides as follows: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law[.]" Interpreting this provision of our constitution, this court has held that "predispute contractual jury waivers are unenforceable under [article 2, section 7 of] the Arkansas Constitution." *Tilley v. Malvern Nat'l Bank*, 2017 Ark. 343, at 15, 532 S.W.3d 570, 578.

Considering these authorities together, this much is plain: in the specific context of a worker seeking to recover unpaid wages from his or her employer, Arkansas law protects the worker's right to file a claim in court and to have that claim decided by a jury, and this

_____

dissenting). Once again, this court is denying the citizens' their right to a jury trial and access to the courts under this statute.

right cannot be "waived" before any such dispute has arisen. To the extent the majority has reached some other conclusion in its opinion, the majority is mistaken.

Here, the ARC agreements would operate to waive the employees' ability to pursue any claims for relief in court and have their claims decided by a jury, all before any such claims have arisen (per the arbitration requirement in Tier III of the ARC agreements, not to mention the steps outlined in the first two Tiers)—in the specific context of a worker seeking to recover owed but unpaid wages from his or her employer. Accordingly, the predispute commitment to arbitrate contained in the ARC agreements cannot qualify as "a manner *prescribed* by law" because it is actually *prohibited* by law, as set forth above. And as set forth in Part II.B *infra*, the FAA has no impact on this conclusion. In short, Arkansas law prohibits enforcement of the ARC agreements.

## B. The FAA Has No Application Here

The next question is whether Arkansas's prohibition against enforcing the ARC agreements would be preempted by application of federal law, specifically the FAA. Another question wrapped up in these considerations is whether, as the majority holds, the FAA is a "manner prescribed by law" by which the workers could legally waive their rights to recover unpaid wages from their employer in court. From a review of the FAA's plain language, the simple answer to each of these questions is no.

In short, the FAA does not apply to employment agreements. Despite the language in section 2 of the FAA providing that arbitration agreements are generally enforceable, and the language in sections 3 and 4 discussing the court procedures for enforcing arbitration agreements, section 1 expressly provides that "nothing [in the FAA] shall apply to *contracts*

19

*of employment* of seamen, railroad employees, or *any other class of workers* engaged in foreign or interstate commerce." 9 U.S.C. § 1 (emphasis added). As the Supreme Court of the United States made clear in *New Prime, Inc. v. Oliveira*, 139 S. Ct. 532 (2019), the language from section 1 quoted above means exactly what it says:

> While a court's authority under the Arbitration Act to compel arbitration may be considerable, it isn't unconditional. If two parties agree to arbitrate future disputes between them and one side later seeks to evade the deal, §§ 3 and 4 of the Act often require a court to stay litigation and compel arbitration "accord[ing to] the terms" of the parties' agreement. But this authority doesn't extend to all private contracts, *no matter how emphatically they may express a preference for arbitration*.
>
> Instead, antecedent statutory provisions *limit the scope* of the court's powers under §§ 3 and 4. Section 2 provides that the Act applies only when the parties' agreement to arbitrate is set forth as a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce." And § 1 helps define § 2's terms. Most relevant for our purposes, § 1 warns that "nothing" in the Act "shall apply" to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

*New Prime*, 139 S. Ct. at 537 (emphasis added). The issue in *New Prime* was whether a plaintiff worker who sued his employer for unpaid wages could be forced to submit to an arbitration provision contained in his work agreement pursuant to the FAA. The Court readily concluded that there was no authority under the FAA to compel arbitration in this context because the FAA does not apply to contracts of employment:

> When Congress enacted the Arbitration Act in 1925, the term "contracts of employment" referred to agreements to perform work. No less than those who came before him, Mr. Oliveira is entitled to the benefit of that same understanding today. Accordingly, his agreement with New Prime falls within § 1's exception, the court of appeals was correct that *it lacked authority under the Act to order arbitration*, and the judgment is . . . [a]ffirmed.

*Id*. at 543–44 (emphasis added).

This plainly applicable authority from the Supreme Court of the United States settles any remaining question before this court in the present matter. There is no authority under the FAA to compel arbitration in the context of a dispute relating to a contract for employment.[2] *Id.* The majority's reliance on the FAA for this proposition is wholly misplaced. The same is true of the Arkansas Uniform Arbitration Act, as it excepts "employer–employee disputes" from its application. Ark. Code Ann. § 16-108-233(b)(2). In this context, neither the FAA nor the AUAA applies. Instead, what remains is the language from the AMWA discussed above and this court's holding in *Tilley*: "[P]redispute contractual jury waivers are unenforceable under [article 2, section 7 of] the Arkansas Constitution." *Tilley*, 2017 Ark. 343, at 15, 532 S.W.3d at 578. As set forth in Part II.A, *supra*, the effect of these legal authorities is that Arkansas workers have a protected right to pursue unpaid wages from their employer in court before a jury, and this right cannot be waived before any such dispute arises. In this case, the ARC agreements operate to take these rights away from the workers, and each of the agreements was submitted to before any dispute arose. Arkansas law therefore prohibits their enforcement.

## II. *The ARC Agreements Are Not Even Valid Contracts*

Furthermore, the ARC agreements at issue here do not even qualify as enforceable contractual agreements. A legal contract requires mutual consideration, an offer with definite

---

[2]To the extent the plaintiff workers in this case are engaged in foreign or interstate commerce, they are excepted from the FAA's application by its plain language. To the extent the plaintiffs in this case are not engaged in foreign or interstate commerce, then applying the FAA to their disputes would exceed the scope of Congress's power under the Commerce Clause, the Article II authority by which the FAA was enacted. Either way, the FAA does not apply here.

terms, and an acceptance of that offer. To be enforceable, the agreement must involve bargained-for obligations by both parties. These requirements are often conceived in terms of a "bargained-for benefit," a "promise for a promise," etc. As this court has said:

> A contract to be enforceable must impose mutual obligations on both of the parties thereto. The contract is based upon the mutual promises made by the parties; and if the promise made by either does not by its terms fix a real liability upon one party, then such promise does not form a consideration for the promise of the other party. As is said in the case of *St. Louis, I.M.&S. Ry. Co. v. Clark*: mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound. A contract, therefore, which leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other.

*Townsend v. Standard Indus., Inc.*, 235 Ark. 951, 954, 363 S.W.2d 535, 537 (1962) (citations omitted) (quoting *El Dorado Ice & Planing Mill Co. v. Kinard*, 96 Ark. 184, 188, 131 S.W. 460, 462 (1910)).

Here, agreeing to submit any subsequent employee-employer dispute to the "three tiers" of alternative dispute resolution contemplated in the ARC agreements was never a requirement for the plaintiffs' employment with Pinnacle Pointe. This is apparent from the language contained in the ARC agreements and from the affidavits contained in the record acknowledging as much. The "ARC ACKNOWLEDGEMENT FORM" contained in the record specifically states:

> We are rolling out a new 3-tier program for resolution of workplace disputes, known as the Alternative Resolution of Conflicts (ARC). ARC is an agreement to arbitrate disputes in the workplace. ARC is a contract between you, the employee, and your employer. *ARC does not change any other terms and conditions of employment*; it simply is a contract where you and your employer agree to resolve any formal disputes through arbitration instead of litigation.

(Emphasis added.)

This is insufficient for an enforceable contract. Pinnacle Pointe simply presented the ARC agreements to the workers, and the ARC agreements provided that if the workers did not "opt out" within the time limit, they were bound to whatever was contained in those documents. There was not a promise being exchanged for another promise.

To the extent one argues that Pinnacle Pointe's "promise" to pursue claims against its workers through its self-authored procedures instead of a court of law is valid consideration, i.e., a "bargained-for benefit" to the workers, I submit that such intimations defy reality. In effect, the ARC agreements simply direct workers to resolve any potential disputes in a less impartial forum where the playing field could be slanted toward the party with greater resources—and without the protections of a court of law.[3] The ARC agreements would curtail or altogether remove the workers' constitutional rights to access the courts, due process, and free speech, in exchange for higher costs and a diminished ability to prove his or her case.[4] The ARC agreements do not contemplate an actual bargained-for benefit from the workers' perspective. Instead, the ARC agreements simply demand (without "chang[ing] any other terms and conditions of employment") that the

---

[3]For example, the filing fee to initiate a civil lawsuit in Arkansas courts is $165, while the filing fee for an employee to initiate arbitration proceedings against his or her employer in the forum designated by the ARC agreements is $300. Additionally, unlike a court of law where the judge is paid by the State, arbitration participants must pay the arbitrator to continue presiding over the matter at each hearing, as well as other costs.

[4]Civil litigation in a court of law provides for substantial discovery tools so the parties can obtain the evidence necessary to prove their respective cases, while the ARC agreement provides, "In arbitration, the parties will have the right to conduct *adequate* civil discovery[.]" (Emphasis added.)

23

workers engage in a separate, affirmative act—"opting out" of the ARC agreements by sending written correspondence to the employer within a time limit—or forfeit the rights already afforded to them under the law. That is not a contract.

In short, regardless of whether the employees acknowledged receipt of the ARC agreements, and regardless of whether the ARC agreements are labeled binding "contract(s)," this arrangement simply lacks the mutual consideration necessary for an enforceable contractual agreement. Accordingly, the ARC agreements in this case are not enforceable, and the circuit court's decision should be affirmed on this basis.

As a final matter, note that BHC Pinnacle Pointe Hospital, LLC (Pinnacle Pointe), is the appellant in this interlocutory appeal. The circuit court below denied Pinnacle Pointe's motion to compel arbitration, ruling in favor of the plaintiff-appellees (workers)—workers seeking to recover unpaid wages from Pinnacle Pointe. The majority's refusal to consider various arguments in favor of the workers is therefore misplaced since this court *affirms* the circuit court's decision if it was correct for *any* reason. *See, e.g.*, *Alexander v. Chapman*, 299 Ark. 126, 771 S.W.2d 744 (1989).[5] I am troubled by this court's robust use of procedural bars, particularly when reaching the merits is the just thing to do. But in this case, the conclusion reached either in Part I or that in Part II of this opinion independently requires that the circuit court's denial of arbitration be affirmed.

I dissent.

---

[5]"It also makes no difference that the trial court's decision to overrule the appellant's objection was not based on the law of the case doctrine. We will affirm the court's ruling if it is correct for any reason. The appellee was not bound to present to the trial court every conceivable reason for overruling the appellant's objection." 299 Ark. at 130, 771 S.W.2d at 746–47 (internal citations omitted).

*Friday, Eldredge & Clark, LLP*, by: *Daniel L. Herrington*, *Joshua C. Ashley*, and *Allison C. Pearson*, for appellant.

*Holleman & Associates, P.A.*, by: *John Holleman*, *Timothy A. Steadman*, and *Jerry Garner*, for appellees.